

1 Lynette Gridiron Winston (#151003)
2   lwinston@afrct.com
  ANGLIN, FLEWELLING, RASMUSSEN,
3   CAMPBELL & TRYTTEN LLP
  199 S. Los Robles Avenue, Suite 600
4 Pasadena, California 91101-2459
  Tel: (626) 535-1900 | Fax: (626) 577-7764
5

6 Attorneys for Defendant
  WELLS FARGO BANK, N.A.
7

FILED

2013 NOV 12 PM 2:13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY: _____

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

10 (RIVERSIDE)

11

ED CV 13 - 02075 VAP (DTBx)

12 JAMES T. WILLIAMS AND
  STEPHANIE WILLIAMS,          CASE NO.:
13

14        Plaintiffs,          **NOTICE OF REMOVAL BY
                                DEFENDANT WELLS FARGO
15                              BANK, N.A., PURSUANT TO 28
  v.                           U.S.C. § 1332**
16

17                             **[DIVERSITY JURISDICTION]**

18 WELLS FARGO BANK, N.A., a
  business entity form unknown, and
19 NDEX WEST, LLC, a business entity
  form unknown, and DOES 1-100,
20 inclusive,

21

22        Defendants.

23

24

25

26

27

28

Vertical left margin: ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

93000/FR1141/00756128-1                  1                  NOTICE OF REMOVAL

**TO PLAINTIFFS, THROUGH THEIR COUNSEL OF RECORD, THE CLERK OF THE ABOVE-ENTITLED COURT AND THE HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:**

**PLEASE TAKE NOTICE** that defendant WELLS FARGO BANK, N.A. (successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB) ("Wells Fargo") hereby provides this Notice of Removal pursuant to U.S.C. §§ 1441(b) & 1331, based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  The action is hereby removed to this Court from the state court, as more particularly set forth below.

**1.     THE STATE COURT ACTION.**

On October 11, 2013, plaintiffs James Williams and Stephanie Williams commenced an action entitled *Williams, et al. v Wells Fargo Bank, N.A.*, *etc., et al.*, in the Superior Court of the State of California, County of Riverside, Case No. RIC1311595 (the "State Court Action").  Defendant Wells Fargo did not appear in the State Court Action.  A copy of the Complaint is attached hereto as <u>Exhibit A</u>. Attached collectively hereto as <u>Exhibit B</u> are all other documents in Wells Fargo's possession from the State Court Action.

**2.     COMPLETE DIVERSITY.**

**A.     DIVERSITY OF CITIZENSHIP.**

This Court has jurisdiction of this case under 28 U.S.C. § 1332 because plaintiffs' citizenship and that of Wells Fargo Bank, N.A., the only real-party-in-interest and non-fraudulently joined defendant in this action, is entirely diverse and the amount in controversy exceeds $75,000.00. Defendant NDeX West, LLC ("NDeX West") is to be ignored as a nominal party and mere stakeholder with no interest in the controversy and against which no claims for relief are sought.

**i.     Plaintiffs' Citizenship.**

Plaintiffs James Williams and Stephanie Williams are California citizens, based on domicile, as they plead owner-occupied residency of their principal

1   residence and home, located at 1015 Nighthawk Circle, Corona, California 92891

2   – *i.e.,* the subject property in this action ("Property"). (Comp. ¶¶1, 3, 36, 56, 64,

3   68, 105-106, 108-109, 120, 130-132).

4       Plaintiffs' California domicile/citizenship is also demonstrated through the

5   personal bankruptcy filings that they initiated in this District in 2012.  On April 2,

6   2012, plaintiffs filed a Voluntary Chapter 7 Petition in the United States

7   Bankruptcy Court, Central District of <u>California</u>, Case No. 6:12-bk-18254-DS,

8   which the Bankruptcy Court dismissed "for other reason" on August 24, 2012

9   ("Case #1"). On August 22, 2012, plaintiffs filed a Voluntary Chapter 13 petition

10  in the United States Bankruptcy Court, Central District of <u>California</u>, Case No.

11  6:12-bk-30353-DS, which the Bankruptcy Court dismissed "for other reason" on

12  July 11, 2013 ("Case No. 2").  On page one of both petitions, plaintiffs aver that

13  their address was in the Riverside County, and at "Information Regarding the

14  Debtor-Venue" on page two of the petition, that "Debtor has been domiciled or has

15  had a residence, principal place of business, or principal assets in this District for

16  180 days immediately preceding the date of this petition or for a longer part of

17  such 180 days than in any other District."  That domicile made this district the

18  appropriate venue for a personal bankruptcy.  28 U.S.C. § 1408.  A true and correct

19  compilation of the bankruptcy petition excerpts from plaintiffs' cases is attached

20  hereto as <u>Exhibit C</u>.

21      Upon information and belief, the plaintiffs in this action reside in California

22  with the intention to remain indefinitely.  "A person's domicile is her permanent

23  home, where she resides with the intention to remain or to which she intends to

24  return."  See e.g., *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. Cal.

25  2001); *Heinz v. Havelock*, 757 F. Supp. 1076, 1079 (C.D. Cal. 1991) (residence

26  and property ownership is a factor in domicile for diversity jurisdiction); *State*

27  *Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence

28  alone is not the equivalent of citizenship, but the place of residence is prima facie

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   **the domicile.").**

2   **ii.    Defendant Wells Fargo Bank, N.A.'s Citizenship.**

3   Pursuant to 28 U.S.C. § 1348, Wells Fargo Bank, N.A., as a national

4   banking association, is a citizen of the state where its main office is "located".  In

5   2006, the United States Supreme Court, after a thorough examination of the

6   historical versions of § 1348 and the existing case law, held that "a national bank,

7   for § 1348 purposes, is a citizen of the state in which its main office, as set forth in

8   its articles of incorporation, is located."  *Wachovia Bank v. Schmidt*, 546 U.S. 303,

9   306-307 (2006) ("*Schmidt*").

10   Wells Fargo, with its main office located in Sioux Falls, South Dakota, is a

11   citizen of South Dakota.  Attached hereto as <u>Exhibit D</u> are true and correct copies

12   of the FDIC Profile and the Articles of Association for Wells Fargo Bank, National

13   Association, as issued by the Office of the Comptroller of the Currency,

14   Administrator of National Banks, reflecting that Wells Fargo (at Article II, §1) has

15   its main office in Sioux Falls, South Dakota.

16   **a.    Post-*Schmidt* Published Decisions Hold that a National**

17   **Bank Is Only a Citizen of One State.**

18   The Supreme Court in *Schmidt* did not decide whether a national bank may

19   also be a citizen of a second state, that of its principal place of business, because

20   the national bank there had its main office and principal place of business in the

21   same state.  *Schmidt*, at 315, fn. 8 and 317, fn. 9.  However, the Supreme Court in

22   *Schmidt* highlighted the fact that § 1348 did not include the principal place of

23   business language: "…§ 1348, <u>however</u>, does not refer to 'principal place of

24   business'; <u>it simply deems</u> such associations 'citizens of the states in which they

25   are respectively located.'"  *Schmidt*, at 317, fn. 9 (emphases added).  "[T]he fairest

26   reading of footnote nine is that the Supreme Court expressed skepticism over

27   whether the term 'located' in § 1348 included a national bank's 'principal place of

28   business' in view of the absence of such term in the statute."  *Excelsior Funds, Inc.*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    *v. J.P. Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006) (rejecting

2    inclusion of principal place of business test).

3         Since *Schmidt*, the vast majority of published decisions have held that §

4    1348 does not include the principal place of business test, leaving national banks a

5    citizen of only one state, that of its main office.

6         In *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 710 (8th Cir.

7    2011) ("WMR"), the Eighth Circuit explicitly rejected including the principal place

8    of business test in § 1348, because that test was not a test for citizenship until

9    1958, ten (10) years after § 1348 was enacted:

10            In 1948, when Congress last amended § 1348, it had not

11            yet created principal-place-of-business citizenship.  At

12            that time the term "located" referred to the state in which

13            the national bank had its main office, as designated by its

14            articles of association.  Moreover, when Congress

15            introduced principal-place-of-business citizenship for

16            state banks and corporations in § 1332(c)(1), it made no

17            reference to jurisdictional parity, nor to national banks or

18            § 1348.  And nothing in § 1348 indicates that it would

19            incorporate by reference any subsequent change in the

20            statutes governing jurisdiction over state banks and

21            corporations. These circumstances strongly suggest that,

22            with the passage of § 1332(c)(1), Congress reconfigured

23            the jurisdictional landscape of state banks and state

24            corporations, but left that of national banks undisturbed.

25            [¶¶]

26            Had Congress wished to retain jurisdictional parity in

27            1958, it could have unequivocally done so.  It did not,

28            and consequently the concept no longer applies.  Whether

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    it ought to be revived <u>is a policy question for Congress,</u>

2    <u>not the federal courts. We will not import a jurisdictional</u>

3    <u>concept into § 1348 that was unknown at the time of its</u>

4    <u>adoption. Accordingly, we hold that, pursuant to § 1348,</u>

5    <u>a national bank is a citizen only of the state in which its</u>

6    <u>main office is located.</u>

7    *Id.* at 708 (emphases added).  *See also Moreno v. Wells Fargo Bank, N.A.*, 2011

8    U.S. Dist. LEXIS 146195, at \*11-\*12 (N.D. Cal. 2011) (following *WMR*).

9         Other courts of appeal have reached the same conclusion, albeit in cases in

10   which jurisdiction did not turn on the national bank's principal place of business.

11   In *Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346 (7th Cir. 2006), the Seventh

12   Circuit concluded that *Schmidt* "held that national banks are citizens *only* of the

13   states in which their main offices are located."  *Id.* at 348 (emphasis added).  In

14   *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207 (1st Cir. 2012), the First Circuit

15   held:  "Wells Fargo, a national bank, is a citizen of the state where it is 'located,'

16   28 U.S.C. § 1348; this is the State designated in its articles of association as its

17   main office, and Wells Fargo is a citizen of South Dakota for diversity purposes."

18   *Id.* at 212 (internal quotations and citations omitted).  Similarly, in *Hargrow v.*

19   *Wells Fargo Bank N.A.*, No. 11-1806, 2012 FED App. 0709N  2012 U.S. App.

20   LEXIS 13638 (6th Cir. July 3, 2012), the Sixth Circuit held (in a non-precedential

21   ruling) that "Wells Fargo is a citizen of South Dakota for diversity purposes."  *Id.*

22   at \*4 (citing *Schmidt*).  Thus, the post-*Schmidt* decisions from multiple circuits all

23   support the conclusion that a national bank's citizenship, for diversity purposes, is

24   determined solely by the location of the national bank's main office.

25        Even before *WMR*, published[1] District Court decisions in California also

26   found Wells Fargo to be a citizen of only South Dakota.  In *DeLeon v. Wells Fargo*

27

28   [1] The unpublished decisions are split.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. 2010), the Court held: "**B. Wells Fargo is not a citizen of California**. [¶¶] …, this Court will decline Plaintiffs' invitation to apply a principal place of business test to Wells Fargo. Consequently, the <u>Court concludes that Wells Fargo is a citizen of the state in which its main office</u>, as specified in its articles of association, is located. *See Schmidt, 546 U.S. at 318*." (original bold, underline added) (also holding "Moreover, in footnote 9, the [Supreme Court in *Schmidt*] recognized the imperfect parity between corporations and national banks…"). *See also Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota for purposes of diversity.").

Many other District Courts, including many situated in California, also reached the same conclusion that only the main office counts for diversity purposes.  (The list is not intended to be exhaustive).  *See, e.g., Excelsior Funds, Inc. v. JP Morgan Chase, N.A.*, 470 F. Supp. 2d 312, 318 (S.D.N.Y. 2006); *Valenzuela v. Wells Fargo Bank, N.A.,* 2013 U.S. Dist. LEXIS 6608, at *3-*5 (C.D. Cal. Jan. 15, 2013); *Kho v. Wells Fargo & Co.*, 2012 U.S. Dist. LEXIS 110957 (C.D. Cal. Aug. 6, 2012); *Young Chull Kim v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 108596 (N.D. Cal. Aug. 2, 2012); *Granada v. Wachovia Fin. Servs. Inc.*, 2012 U.S. Dist. LEXIS 54149 (C.D. Cal. Apr. 18, 2012); *Forsythe v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 44031 (C.D. Cal. Mar. 28, 2012); *Sami v. Wells Fargo Bank, et al.*, 2012 U.S. Dist. LEXIS 38466 (N.D. Cal. Mar. 21, 2012); *Flores v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 32648 (N.D. Cal. Mar. 12, 2012); *Mireles v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 3871 (C.D. Cal. Jan. 11, 2012); *Moreno v. Wells Fargo*, 2011 U.S. Dist. LEXIS 146195 (N.D. Cal. Dec. 20, 2011); *Marzette v. Provident Savings Bank, F.S.B.*, 2011 U.S. Dist. LEXIS 130657 (E.D. Cal. Nov. 10, 2011); *OneWest Bank, FSB v. Joam, LLC*, 2011 U.S. Dist. LEXIS 150999 (E.D.N.Y. July 26, 2011); *Albarran v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 59635 (C.D. Cal. May 26,

1    2011); *Kasramehr v. Wells Fargo Bank N.A.*, 2011 U.S. Dist. LEXIS 52930 (C.D.

2    Cal. May 17, 2011); *Tse v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 6796

3    (N.D. Cal. Jan. 19, 2011); *Atienza v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS

4    1738 (N.D. Cal. Jan. 4, 2011); *California ex rel. Bates v. Mortg. Elec. Registration*

5    *Sys., Inc.*, 2010 U.S. Dist. LEXIS 81650 (E.D. Cal. July 21, 2010); *Cochran v.*

6    *Wachovia Bank, N.A.*, 2010 U.S. Dist. LEXIS 38379 (C.D. Cal. Mar. 9, 2010).[2]

7        Although the Ninth Circuit has not explicitly decided the issue after *Schmidt*,

8    it has suggested that it would likely not include the principal place of business test

9    in light of *Schmidt*:  "Defendant [U.S. Bank] is a citizen of Ohio because its main

10   office is located in that state . . . ."  *Lowdermilk v. U.S. Bank, N.A.*, 479 F.3d 994,

11   997 (9th Cir. 2007) citing *Schmidt*, 546 U.S. at 305–307.  Importantly, *Lowdermilk*

12   did not even consider U.S. Bank's principal place of business in Minnesota.[3]

13   ([http://phx.corporate-ir.net/phoenix.zhtml?c=117565&p=irol-contact](http://phx.corporate-ir.net/phoenix.zhtml?c=117565&p=irol-contact)).

14       Of particular note is the Eastern District of California's ruling in *Bates v.*

15   *Mortg. Electronic Registration System, Inc.,* 2010 U.S. Dist. Lexis 81650, at *3-*4

16   (E.D. Cal. July 21, 2010).  The Court in that case considered the issue and

17   concluded that it had diversity jurisdiction because Wells Fargo Bank, N.A. was

18   not a California citizen.  *Id.* at *4.  Plaintiff appealed the eventual dismissal of the

19   action including the District Court's denial of his motion to remand.  *Cal. ex rel.*

20

21

22   _____

23   [2] Some district courts in California have reached a contrary result, however.  (List not intended
to be exhaustive).  *See, e.g., Taheny v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 47195

24   (E.D. Cal. Apr. 3, 2012); *Uriarte v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 127497
(S.D. Cal. Nov. 3, 2011); *Guinto v. Wells Fargo Bank*, No. CIV. S-11-372 LKK/GGH, 2011

25   U.S. Dist. LEXIS 114986 (E.D. Cal. Oct. 5, 2011); *Saberi v. Wells Fargo Home Mortg.*, 2011
U.S. Dist. LEXIS 5286 (S.D. Cal. Jan. 20, 2011).

26   [3] Many decades before *Schmidt*, and under a prior statute, *American Surety v. Bank of Cal.*, 133

27   2d 160, 162 (9th Cir. 1943) held that a national bank was a citizen only of its principal place of
business.  This finding cannot be reconciled with *Schmidt*, which held that a bank's main office

28   must be used to assess citizenship.  *Schmidt*, 546 U.S. at 307.

*(left margin, rotated)* ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *Bates v. Mortgage Elec. Registration Sys.*, 694 F.3d 1076, 1080 (9th Cir 2012).[4]

2  The Ninth Circuit determined diversity jurisdiction existed and upheld the District

3  Court's judgment.  *Id.* at 1080.  If *American Surety* applied, the Ninth Circuit

4  would have had to dismiss due to the lack of diversity.  It did not and thereby

5  confirmed that Wells Fargo is not a California citizen.

6       Accordingly, Wells Fargo is only a citizen of South Dakota for diversity

7  purposes, and complete diversity of citizenship exists under 28 U.S.C. § 1332(a),

8  in that plaintiffs are California citizens and defendant Wells Fargo is a citizen of

9  South Dakota.

10       **i.**    **<u>NDeX West, LLC's Citizenship.</u>**

11       Although defendant NDeX West, LLC ("NDeX West") may be ignored for

12  diversity jurisdiction purposes, it is not a California citizen.  It is a single member

13  limited liability company organized in Delaware and headquartered in Texas.  A

14  limited liability company is treated like a partnership for diversity purposes.  Thus,

15  the Court looks solely at the citizenship of each member or partner of the LLC.

16  *Carden v. Arkoma Assocs.,* 494 U.S. 185, 192-196 (1990); *Johnson v. Columbia*

17  *Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 1990).

18       As set forth in the Declaration of Renee Jackson on behalf of defendant

19  NDeX West ("Jackson Decl.") (attached hereto as <u>Exhibit E</u>), NDeX West is a

20  single-member limited liability company organized in Delaware and

21  headquartered in Texas.  National Default Exchange Holdings, LP ("NDeX

22  Holdings"), is the manager and sole member of NDeX West, and is a Delaware

23  limited partnership headquartered in Texas.  The General Partner of NDeX

24  Holdings is National Default Exchange Management, Inc. ("NDeX

25  Management"), a Delaware corporation headquartered in Texas.  American

26

27  [4]  The appeal focused on another aspect of diversity jurisdiction, but Wells Fargo's citizenship

28  was an issue in the papers before it and the Ninth Circuit Court had a duty to consider all bases for its jurisdiction.

Anglin Flewelling Rasmussen Campbell & Trytten llp

1  Processing Company, LLC ("APC"), a limited liability company organized and

2  headquartered in Michigan, owns 86% of both NDeX Holdings and NDeX

3  Management.  The remaining 14% of the limited partner interest of NDeX

4  Holdings is owned by THP/NDEX AIV, L.P. a Delaware limited partnership,

5  headquartered in Minnesota ("THP LP").  One hundred percent of the general

6  partnership interests of THP LP is owned by THP/NDeX AIV Corp. ("THP

7  Corp"), a corporation organized under the laws of Delaware and headquartered in

8  Minnesota.  THP Corp is wholly owned by APC.  APC is owned 94% by Dolan

9  APC LLC ("Dolan APC"), a Delaware limited liability company headquartered in

10 Minnesota and 6% is owned by individuals, all of whom are residents of the State

11 of Texas.  Dolan APC is wholly owned by The Dolan Company, a Delaware

12 corporation, headquartered in Minnesota. (Jackson Decl. ¶¶2-3).  Accordingly,

13 NDeX West and its members and partners are Delaware, Texas, Michigan, and

14 Minnesota citizens.

15        However, even if NDeX was not a diverse party, "fraudulently joined

16 defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug*

17 *Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  The citizenship of a fraudulently joined

18 defendant is ignored for purposes of diversity. *Morris v. Princess Cruises, Inc.*,

19 236 F. 3d 1061, 1067 (9th Cir. 2001).  Fraudulent joinder is conclusive where it is

20 demonstrated that "there is no possibility that the plaintiff will be able to establish

21 a cause of action in State court against the alleged sham defendant." *Good v.*

22 *Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  When

23 testing the applicability of federal diversity jurisdiction, however, the Court is not

24 limited to the four corners of the pleadings.  *West America Corp. v. Vaughan-*

25 *Bassett Furniture Co., Inc.*, 765 F.2d 932, 936 (9th Cir. 1985); *Charlin v. Allstate*

26 *Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998) (to ascertain whether a

27 joinder is fraudulent, this Court may "look beyond the pleadings").

28        Defendant NDeX West is a nominal party that replaced Golden West

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Savings Association Service Co., the named trustee on the Deed of Trust

2   encumbering the Property at issue here.  NDeX West has no financial interest in

3   the subject property and its involvement with the foreclosure of the property was

4   strictly within its ministerial role as the substituted trustee under the Deed of

5   Trust, which is protected under California law.  See *Cabriales v. Aurora Loan*

6   *Servs.*, No. C 10-161, 2010 U.S. Dist. LEXIS 24726, at *6-*7 (N.D. Cal. Mar. 2,

7   2010).  "A defendant is a nominal party where his role is limited to that of a

8   stakeholder."  *Hewitt v. Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986).  Here,

9   NDeX West is a nominal party, or mere stakeholder, since it is only a trustee

10  under the Deed of Trust.

11         Moreover, defendant NDeX West's status as a nominal party in this

12  litigation is reflected by the Declaration of Non-Monetary Status ("DNMS") that it

13  filed in the State Court Action on October 30, 2013, pursuant to Cal. Civil Code

14  §2924*l*.  (A true and correct copy is attached hereto as part of Exhibit B.)  Civil

15  Code §2924l(d); *Amaro v. Option One Mortg. Corp.*, Case No. EDCV 08-1498,

16  2009 U.S. Dist. LEXIS 2855 ( E.D. Cal. Jan. 14, 2009) ("Defendant… filed a

17  'Declaration of Nonmonetary Status' in the state court proceeding before removal,

18  thereby transforming it, the trustee under the deed of trust, into a nominal third

19  party, no longer required to participate in the action pursuant to California Civil

20  Code § 2924l."); *Hafiz v. Greenpoint Mortg. Funding Inc*., 652 F. Supp. 2d 1050,

21  1052 (N.D. Cal. 2009) ("When a trustee under a deed of trust files a declaration of

22  non-monetary status, the party is transformed into a 'nominal' party, thus excusing

23  it from participating in the action. Cal. Civ. Code § 2924l."); See also *Cabriales v.*

24  *Aurora Loan Services*, No. C 10-161, 2010 U.S. Dist. LEXIS 24726, at *6-7 (N.D.

25  Cal. Mar. 2, 2010) (on diversity removal, remand denied because trustee under

26  deed of trust was a nominal party due to the declaration of non-monetary status it

27  filed which went unchallenged [citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458,

28  461 (1980) which states, "[a] federal court must disregard nominal or formal

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  parties and rest jurisdiction only upon the citizenship of real parties to the

2  controversy"]); *Nguyen v. Wells Fargo Bank*, 749 F. Supp. 1022, 1026-1028 (N.D.

3  Cal. 2010) (held that trustee Executive Trustee Services, LLC, was an uncontested

4  nominal defendant to be ignored for diversity purposes, and that Plaintiff had not

5  asserted it should be treated as a citizen of California for removal purposes—

6  upheld propriety of removal and denied motion to remand).

7       Further, actions related to the foreclosure filings and trustee's sale are

8  privileged, preventing a claim for damages against the trustee.  Cal. Civ. Code

9  § 2924(d) (incorporating Cal. Civ. Code § 47(c)).  This privilege bars any tort

10 claim arising out of the statutorily required mailing, publication, and delivery of

11 notices in non-judicial foreclosure, and the performance of statutory non-judicial

12 procedures absent a showing of malice.  *Kachlon v. Markowitz*, 168 Cal. App. 4th

13 316, 339 (2008).  Plaintiffs' complaint pleads no allegations that specifically tie

14 NDeX West to the wrongdoings alleged to have occurred in this case (outside of

15 its due course recordation of foreclosure notices against the subject property, as

16 the trustee of record).  Accordingly, NDeX West is a nominal party in this action

17 and should not be considered for purposes of diversity.

18      Notwithstanding, complete diversity of citizenship exists under 28 U.S.C.

19 § 1332(a), in that plaintiffs are California citizens, Wells Fargo is a South Dakota

20 citizen and NDeX West is a Delaware, Texas, Michigan and Minnesota citizen.

21 **2.   <u>AMOUNT IN CONTROVERSY</u>.**

22      Generally, "[t]he amount in controversy is determined from the allegations

23 or prayer of the complaint."  *Schwarzer, Tashima & Wagstaffe*, *Fed. Civ. Proc.*

24 *Before Trial* (2009), ¶2:450 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*,

25 303 U.S. 283, 289 (1938), which held that an inability to recover an amount

26 adequate to give the court jurisdiction does not oust the court of jurisdiction).

27 Moreover, "'[i]n actions seeking declaratory or injunctive relief, it is well

28 established that the amount in controversy is measured by the value of the object

1  of the litigation.' 'If the primary purpose of a lawsuit is to enjoin a bank from

2  selling or transferring property, then the property is the object of the litigation.'"

3  *Reyes v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, at *12-*13

4  (N.D. Cal. June 29, 2010).

5        Moreover, where a Complaint seeks to invalidate a loan secured by a deed of

6  trust, the amount in controversy is the loan amount.  *Nguyen v. Wells Fargo Bank,*

7  *N.A.*, 749 F. Supp. 2d 1022, 1028-1029 (N.D. Cal. 2010).  In *Nguyen*, plaintiff

8  sought to quiet title by cancelling the deed of trust and note on the property and

9  sought rescission of the $712,000.00 loan.  The court held the loan amount, among

10  other things, satisfied the amount in controversy requirement.  *Id.*  Similarly, in

11  *Taguinod v. World Savs. Bank*, 755 F. Supp. 2d 1064 (C.D. Cal. 2010), the court

12  held the amount in controversy requirement was established because the complaint

13  sought rescission of a loan, the amount of which was shown by the attachment of

14  the promissory note to the removal notice.  *Id. at* 1068-1069.

15        At paragraph 34 of the Complaint, plaintiffs plead that they entered into a

16  written loan agreement with World Savings Bank, FSB and obtained a mortgage

17  loan from them, in the amount of $465,000.00, which was secured by the Property

18  through a Deed of Trust.  (World Savings Bank, FSB is Wells Fargo's predecessor

19  in interest).  (A true and correct copy of the Deed of Trust pertaining to plaintiffs'

20  loan herein is attached hereto as Exhibit F).  Plaintiffs admittedly defaulted on their

21  loan obligations in 2011 when they "suffered a significant financial setback"

22  (Comp. ¶37).  Despite plaintiffs' admitted default on their repayment obligations,

23  which automatically warrants the initiation of non-judicial foreclosure proceedings

24  in accordance with the terms of the Deed of Trust, plaintiffs nonetheless bring this

25  action against Wells Fargo.

26        Plaintiffs contend that Wells Fargo failed to properly process their loan

27  modification application and failed to offer them a loan modification.  Plaintiffs

28  assert claims for violation of California Civil Code § 2923.6; negligence; violation

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    of California Business & Professions Code § 17200; and demand for an

2    accounting.  Here, plaintiffs seek and pray for damages in excess of the

3    jurisdictional limits; injunctive relief enjoining the sale and any false or misleading

4    statements or negative credit reporting, disgorgement of all monies acquired by

5    unlawful practices, 10% interest, punitive damages, reasonable attorneys' fees,

6    costs, and all other relief available under Civil Code § 2924.12(i), and such other

7    and further relief as this Court deems just and appropriate .  (Comp. ¶¶94, 133;

8    Prayer ¶¶1-10).

9         Accordingly, as in *Reyes, Nguyen and Taguinod,* the Property, which

10   plaintiffs seek to enjoin defendants from selling, and the loan amount, which

11   plaintiffs seek to modify, clearly exceed the $75,000.00 amount in controversy

12   threshold.

**3.    TIMELINESS.**

14        This Notice is timely, pursuant to 28 U.S.C. § 1446(b), because Wells Fargo

15   received service of process of the State Court Action on October 11, 2013, via

16   personal service.  Counsel for nominal party, NDeX West, has confirmed that

17   NDeX West received service of process of the State Court Action, via personal

18   service, on October 11, 2013 and appeared in the State Court Action on October

19   30, 2013 by filing a Declaration of Non-Monetary Status ("DNMS"). (A true and

20   correct copy of the DNMS is included in Exhibit B). Nonetheless, NDeX West

21   joins in this removal by signing a *Consent to Removal* that is being filed

22   concurrently herewith. *Destfino v. Reiswig, et al.,* 630 F.3d 952, 956 (9th Cir. Cal.

23   2011) ("we hold that each defendant is entitled to thirty days to exercise his

24   removal rights after being served").

**4.    JOINDER.**

26        Since NDeX West is a fraudulently joined, nominal party in this action, it is

27   not required to consent to this removal.  See *Emrich v. Touche Ross & Co*., 846

28   F.2d 1190, 1193 (9th Cir. 1988) (general requirement of consent does not apply to

1  "nominal, unknown or fraudulently joined parties").  Nonetheless, NDeX West

2  has consented to this removal by signing a *Consent to Removal,* which is being

3  filed concurrently herewith.  Moreover, the State Court Docket reflects that no doe

4  defendants have been identified or received service of process as yet.  Therefore,

5  no joinder of unserved defendants is required to perfect removal of the State Court

6  Action.  *Salveson v. Western States Bankcard Ass'n,* 730 F.2d 1423, 1429 (9th

7  Cir. 1984).

8  **5.**      **INTRADISTRICT ASSIGNMENT.**

9           This case is being removed to the Central District, Eastern Division of this

10  Court because the existing State Court Action is pending in the Riverside County.

11  **6.**      **OTHER PERTINENT INFORMATION.**

12           A.      Pursuant to 28 U.S.C. § 1446(a), defendant Wells Fargo files this

13  Notice in the District Court of the United States for the district and division within

14  which the State Court Action is pending.

15           B.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice and

16  attachments will promptly be served on plaintiffs' counsel in the State Court

17  Action, and notice thereof will be filed with the clerk of the Riverside County

18  Superior Court.

19           WHEREFORE, defendant Wells Fargo hereby removes Riverside County

20  Superior Court Case No. RIC1311595 to the United States District Court for the

21  Central District of California, Eastern Division (Riverside).

22                                             Respectfully submitted,

23  Dated:  November 11, 2013        ANGLIN, FLEWELLING, RASMUSSEN,
                                             CAMPBELL & TRYTTEN LLP
24

25                                             By: _Lynette Gridiron Winston_

26                                                  Lynette Gridiron Winston
                                                    lwinston@afrct.com
27                                             Attorneys for Defendant
                                             WELLS FARGO BANK, N.A.
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# EXHIBIT A

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
THE LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
(949) 200-8755
(866) 843-8308

Attorneys for Plaintiffs JAMES WILLIAMS AND STEPHANIE WILLIAMS



F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 11 2013

I. SIRACUSA

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF RIVERSIDE- HISTORIC COURTHOUSE

JAMES T. WILLIAMS AND
STEPHANIE WILLIAMS,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., a
business entity form unknown, and
NDEX WEST, LLC, a business entity
form unknown, and DOES 1-100,
inclusive,

Defendants.

Case No.: **RIC 1311595**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:

1. **VIOLATION OF CAL. CIVIL CODE §2923.6**
2. **NEGLIGENCE**
3. **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200**
4. **DEMAND FOR ACCOUNTING**

DEMAND FOR JURY TRIAL

By Fax

TO WELLS FARGO BANK, N.A. and NDEX WEST, LLC, and to their respective counsel of record:

Plaintiffs JAMES T. WILLIAMS and STEPHANIE WILLIAMS (hereinafter collectively referred to as "Plaintiffs"), by their attorney, for causes of action against Defendants WELLS FARGO BANK, N.A., a business entity form unknown, NDEX WEST, LLC, a business entity form unknown, and DOES 1 through 100, inclusive (hereinafter collectively referred to as "Defendants"), allege the following on information and belief:

///

COPY

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
1

# I.

## INTRODUCTION

1.  Plaintiffs own the subject property located at **1015 Nighthawk Circle, Corona, CA 92881** (the "Subject Property").

2.  Plaintiffs bring this action against Defendants and DOES 1 to 100 to challenge the wrongful foreclosure proceedings on Plaintiffs' home, and based on the following:

    a.  Defendants' violations of California Civil Code §2923.6;

    b.  Defendants' negligence in assessing Plaintiffs' loan for any and all foreclosure prevention alternatives, including a loan modification;

    c.  Defendants' violations of California Business & Professions Code §17200 by engaging in unlawful, unfair and/or fraudulent business practices as part and parcel to unsafe and unsound banking procedures; and

    d.  Defendants' unlawful billing practices.

# II.

## PARTIES

3.  At all times mentioned herein, Plaintiffs JAMES T. WILLIAMS AND STEPHANIE WILLIAMS are individuals who reside in the County of Riverside, State of California. Plaintiffs currently reside in their home, the Subject Property. Plaintiffs are the rightful owners of the Subject Property.

4.  Upon information and belief, Defendant WELLS FARGO BANK, N.A. ("Wells Fargo"), is a business organization of unknown form doing business in the County of Riverside, State of California.

5.  Upon information and belief, Defendant NDEX WEST, LLC ("NDEX West"), is a business organization of unknown form doing business in the County of Riverside, State of California.

6.  Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore, sue these Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

2

7. Plaintiffs are informed and believe, and based thereon, allege that at all times mentioned in this complaint Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

8. Plaintiffs are informed and believe, and based thereon, allege that each of said Defendants is, in some manner, legally responsible for the unlawful actions, unlawful policies, and unlawful practices hereinafter alleged, and that Plaintiffs' damages were proximately caused by Defendants. Plaintiffs will seek leave of Court to amend this Complaint to set forth the appropriate charging allegations along with the true names and capacities of said Defendants when they have been ascertained.

9. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

### III.

### JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint pursuant to California Code of Civil Procedure (CCP) §392 and §395 because the dispute arises over real property, the Subject Property, that is located in the County of Riverside, and because Plaintiffs' injury and damages occurred in this jurisdictional area.

11. This Court has personal jurisdiction over the parties, pursuant to CCP §410.10. Plaintiffs are, at all times relevant herein, residents of the County of Riverside, State of California. Defendants have subjected themselves to this Court's jurisdiction because of their contact with this County by virtue of encumbering and claiming an interest to the real property, the Subject Property, located in this County, and because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
3

1    portion of the acts, omissions, events, and transactions constituting the causes of action alleged

2    herein occurred within the County of Riverside, State of California.

3    12. This Court is the appropriate venue for this action under CCP §395 & §395.5 because the

4    actions that give rise to the causes of action alleged in this Complaint occurred in this County,

5    and the Subject Property is located in this County. Plaintiffs hereby designate the County of

6    Riverside, State of California, as the place of proper venue.

7

8                                          **IV.**

9                             **DEMAND FOR JURY TRIAL**

10   13. Plaintiffs hereby respectfully request a trial by jury on all appropriate issues raised in this

11   Complaint.

12                                         **V.**

13   **THE CALIFORNIA HOMEOWNER'S BILL OF RIGHTS: Effective on January 1, 2013**

14   14. Plaintiffs sue under several causes of action, among them, a new statute in the California

15   Homeowner's Bill of Rights, effective on January 1, 2013: Civil Code §2923.6 (Defendants'

16   evaluation of Plaintiffs' loan for available foreclosure prevention alternatives, and obligatory

17   additional evaluation based on a material change in Plaintiffs' financial circumstances).

18   15. California's housing crisis has had a devastating economic impact on the state and local

19   governments. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In

20   2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in CA. All of this foreclosure

21   activity has adversely affected property values and resulted in less money for schools, public

22   safety, and other public services. According to the Urban Institute, every foreclosure imposes

23   significant costs on local governments, including an estimated nineteen thousand two hundred

24   twenty-nine dollars ($19,229) in local government costs. The foreclosure crisis continues in CA,

25   and there remain more than two million "underwater" mortgages in CA.

26   16. As a result, in February 2012, Attorney General Harris announced the California "Homeowner

27   Bill of Rights" (the "HOBR"), designed to protect homeowners from unfair practices by banks

28   and mortgage companies and to help consumers and communities cope with the state's urgent

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

4

Exhibit A to Notice of Removal
Page 19

mortgage and foreclosure crisis.

17. The HOBR provides protections for borrowers and struggling homeowners by prohibiting a series of inherently unfair bank practices that have needlessly forced thousands of homeowners into foreclosure. Essentially, this law ensures that qualified first mortgage borrowers are afforded the right to explore any available alternative to foreclosure with their mortgage servicer before a California nonjudicial foreclosure can commence and/or be completed through foreclosure sale.

18. The HOBR takes effect January 1, 2013 through January 1, 2018, when alternate provisions become effective on and after that date.

## VI.

### FACTUAL BACKGROUND

### Defendants' Marked-Up and Unnecessary Fees for Default-Related Services

19. Plaintiffs allege, upon information and belief, that in Defendants' loan servicing operations, Defendants follow a strategy to generate fraudulently concealed default-related fee income. Rather than simply obtaining default-related services directly from independent third-party venders, and charging borrowers for the actual cost of these services, Defendants assess borrowers' accounts for services that are unnecessary and they unlawfully add additional undisclosed profits on to the charges before they are assessed on borrowers' accounts.

20. Upon information and belief, Defendants' scheme works as follows: Defendants order default-related services from their subsidiaries and affiliated companies, who, in turn, obtain the services from third-party vendors. The third-party vendors charge Defendants for their services. Defendants, in turn, charge borrowers a fee that is significantly marked-up from the third-party vendors' actual fees for the services. As a result, even though the mortgage market has collapsed, and more and more borrowers are following into delinquency, Defendants continue to earn substantial profits by assessing undisclosed, marked-up fees for default-related services on borrowers' accounts.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

5

21. The mortgage contract between a lender and a borrower consists of two (2) documents: the Promissory Note ("Note") and the Mortgage or Deed of Trust ("Security Instrument"). The mortgage contracts serviced by Defendants are substantially similar because they conform to the standard Fannie Mae/Freddie Mac form contract. These contracts contain form language regarding what occurs if borrowers default on their loans. The Security Instrument authorizes the loan services, in the event of default, to:

> pay for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.

22. The Security Instrument further provides that any such amounts disbursed by the servicer shall become additional debt of the borrower secured by the Security Instrument and shall bear interest at the Note rate from the date of disbursement. The Note provides that the note holder:

> will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

23. Thus, the mortgage contract allows the servicer to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrowers, but it *does not authorize* the servicer to mark-up the actual cost of those services to make a profit.

24. As discussed above, by charging marked-up fees, Defendants violate their agreements with borrowers because, among other things, charges that exceed the actual cost of the services provided are neither reasonable nor appropriate to protect the Note holder's interest in the property and the rights under the Security Instrument.

25. Furthermore, the wrongful nature of the marked-up fees is demonstrated by the fact that Defendants do not disclose to borrowers that the fees assessed on their accounts are marked-up from the amount actually charged by the vendor.

26. Plaintiffs are informed and believe, and on that basis, allege that Defendants conceal these marked-up fees for default-related services on borrowers' accounts, including Plaintiffs', by identifying the charges only as "Miscellaneous Fees," "Corporate Advances," "Other Fees" or

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE.150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

6

1   "Advances" on borrowers' statements.

2   27. Plaintiffs are informed and believe, and on that basis, allege that under the "Miscellaneous

3   Fees," "Corporate Advances," "Other Fees" or "Advances" categories on borrowers' statements,

4   Defendants also assess unnecessary and unreasonable fees for property inspections. Although

5   such inspections purportedly are conducted to guard against property loss, Defendants' practices

6   are designed to ensure that these fees are charged to as many accounts as possible, even if the

7   inspections are inappropriate, unnecessary, or unreasonable.

8   28. Plaintiffs are informed and believe, and on that basis, allege that even if the property inspections

9   were properly performed and actually reviewed by someone at the bank, Defendants'

10   continuous assessment of fees for these inspections on borrowers' accounts is still improper and

11   unreasonable because of the frequency with which they are performed. If the first inspection

12   report shows that the property is occupied and in good condition, it is unnecessary and

13   inappropriate for Defendants to automatically continue to order monthly inspections. Nothing

14   in the reports justifies continued monitoring.

15   29. As a result of Defendants' concealment of these unlawful fees, thousands of unsuspecting

16   borrowers, including Plaintiffs, are cheated out of millions of dollars.

17   **Plaintiffs' Injuries as a Result of Defendants' Practices**

18   30. Plaintiffs allege, upon information and belief, that the assessment of these marked-up fees can

19   make it impossible for borrowers to become current on their loan. Charges for default-related

20   services can add hundreds or thousands of dollars to borrowers' loans over time, driving them

21   further into default.

22   31. When borrowers, including Plaintiffs, get behind on their mortgage, and fees for these default-

23   related services are added on to the past-due principal and interest payments, Defendants'

24   practices make it increasingly difficult for borrowers to ever bring their loan current. Even if

25   borrowers pay the delinquent principal and interest payments, the marked-up fees for default-

26   related services ensure that borrowers stay in default. After paying delinquent principal and

27   interest, although the next payment comes in on time, often through automatic payment

28   deductions from borrowers' bank accounts, part of the payment is applied to the fees first, so

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

7

1   there is not enough to cover the entire monthly payment. This makes the payment late, creating

2   a cascade of more fees and arrears, which keeps borrowers in delinquency. By the time

3   borrowers are aware, Defendants are threatening to foreclose unless a huge payment is made,

4   and the weight of these unnecessary fees drops borrowers into a financial abyss.

5   32. As a result of Defendants' practices, borrowers, including Plaintiffs, are forced to move deeper

6   into default, and suffer damage to their credit scores. Defendants provide information about

7   borrowers' payment history to credit reporting companies, including whether they have been

8   late with a payment or missed any payments. By keeping borrowers in default with these

9   practices, Defendants affect whether borrowers can get a loan in the future, and what borrowers'

10   interest rate will be on such loans.

11   33. Additionally, as a result of Defendants' practices, borrowers, including Plaintiffs, are

12   wrongfully driven into foreclosure.

13   **The Loan**

14   34. In 2005, Plaintiffs entered into a written loan agreement, and obtained a mortgage loan in the

15   amount of $456,000 (the "Loan"), secured by the Subject Property through a Deed of Trust

16   (recorded January 11, 2005), then and now the principal residence of Plaintiffs. A true and

17   correct copy of the Deed of Trust is attached hereto and incorporated herein as **Exhibit A.**

18   35. Plaintiffs own the Subject Property at 1015 Nighthawk Circle, Corona, CA 92881. Plaintiffs'

19   ownership is documented in a number of written instruments that are on file with the Riverside

20   County's Recorder's Office, including a Grant Deed.

21   36. The Subject Property was and currently is the principal residence of Plaintiffs.

22   **Plaintiffs' Financial Struggle and Pursuit of Foreclosure Prevention Alternatives**

23   37. Plaintiffs performed dutifully under the Loan, as required, until 2011 when Plaintiffs suffered a

24   significant financial setback due to a downturn in the economy, and Plaintiffs were in a constant

25   struggle to make the monthly mortgage payments. As a result, Plaintiffs were forced to use the

26   money in their savings accounts to remain current on the Loan.

27   38. Plaintiffs were able to maintain making their monthly payments under the terms of the Loan;

28   however, in or around May 2011, after having exhausted through their savings, Plaintiffs were

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
8

1   unable to make the monthly payment. From that point onwards, Plaintiffs were playing "catch-

2   up" with their mortgage payments, but consistently remained only one (1) month behind on their

3   payments.

4   39. In or around August 2011, Plaintiffs contacted their mortgage servicer at the time, Wachovia

5      Mortgage, to inquire about a loan modification option. Wachovia Mortgage, through its

6      authorized representative, advised Plaintiffs that they "qualified" for a loan modification, and

7      promised Plaintiffs that if they submitted a loan modification application, then no foreclosure

8      proceedings would initiate while their application was in review. However, the representative

9      further advised Plaintiffs that Wachovia Mortgage would not assist them with their mortgage

10    and review them for a loan modification if Plaintiffs continued to make any payments towards

11    the mortgage. The representative advised Plaintiffs to stop making any payments under the

12    Loan, and once the loan modification review was complete, Plaintiffs would either be approved

13    or denied for a modification plan.

14   40. These representations led Plaintiffs to believe that they would qualify for a loan modification,

15     that they would secure a new affordable monthly mortgage payment, and that they would retain

16     the Subject Property.

17   41. Accordingly, Plaintiffs applied for a loan modification and submitted a completed modification

18     application, along with all necessary paperwork, directly to Wachovia Mortgage, via facsimile.

19     Moreover, Plaintiffs justifiably relied on Wachovia Mortgage's representations and stopped

20     making any payments towards the mortgage.

21   42. Over the next couple of months, Plaintiffs consistently received letters from Wachovia

22     Mortgage requesting financial documents, and as requested, Plaintiffs continued to submit and

23     resubmit updated financial documents and followed-up weekly with Wachovia Mortgage, with

24     the hope of securing a loan modification. Plaintiffs were consistently assured that their

25     documents had been received and that their file was "in review."

26   43. However, in or around late October 2011, Plaintiffs received a letter from Wachovia Mortgage,

27     advising Plaintiffs that they had to pay a total amount of approximately $15,000 to cure the

28     default and bring the Loan current, or the Loan would be referred to foreclosure.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

9

44. Plaintiffs immediately contacted Wachovia Mortgage, and its representative advised Plaintiffs that the letter did not impact the modification review process, and that the Loan would still be considered for a modification. Plaintiffs emphasized that they were now three (3) months behind on the Loan at Wachovia Mortgage's direction and Wachovia Mortgage had yet to provide any meaningful mortgage assistance as promised. The representative assured Plaintiffs that they were being considered for all available modification programs and an affordable modified payment was forthcoming.

45. However, on or around December 12, 2011, while Plaintiffs' application for a loan modification was still "in review" for all available modification programs, Defendants executed a Notice of Default and Election to Sell Under Deed of Trust (the "NOD" or "Notice of Default"), against the Subject Property. A true and correct copy of the Notice of Default is attached and incorporated hereto as **Exhibit B**, recorded on December 13, 2011 in the Riverside County Recorder's Office.

46. Immediately upon receiving the NOD, Plaintiffs contacted Defendant Wells Fargo, as instructed in the NOD, and its representative informed Plaintiffs that their application for a loan modification had been denied, with no further explanation. The representative informed Plaintiffs that their only option was to re-apply for a loan modification and that if Plaintiffs re-applied, the NOD would be held "in suspense" while the review of Plaintiffs' application was pending.

47. As advised, Plaintiffs re-applied for a loan modification, and submitted a new and complete application directly to Defendant Wells Fargo, via facsimile.

48. Plaintiffs followed-up with Defendant Wells Fargo a few days after submitting their application to confirm receipt of their application, and Defendant Wells Fargo, through its representative, advised Plaintiffs that they needed to do a "phone interview" with Wells Fargo and "review financials." Once again, Plaintiffs followed Defendant's instructions, and proceeded with the financial review over the phone.

49. Once the representative finished the interview and advised Plaintiffs that he had obtained all the information needed for the modification review, the representative advised Plaintiffs that their

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

1   application had been received and would be in "review."

2   50. However, just a few days after Plaintiffs submitted their application for a loan modification and

3   completed the financial phone interview with Wells Fargo, Plaintiffs were informed that their

4   application had been denied because there was no change in Plaintiffs' financial circumstances

5   since Plaintiffs' previous application for a loan modification.

6   51. Plaintiffs immediately contacted Defendant Wells Fargo, and its representative advised

7   Plaintiffs that their reported income of just below $16,000 per month was too much to qualify

8   Plaintiffs for a loan modification. Plaintiffs informed the representative that this income was

9   incorrect, and in fact, Plaintiffs' income was much lower. The representative instructed

10   Plaintiffs to submit supporting documents which showed this income, and Plaintiffs' application

11   would be re-evaluated. Plaintiff justifiably relied on this representation and submitted the

12   requested updated documents.

13   52. Plaintiffs actively followed up with Wells Fargo on the status of the review process and were

14   always assured that they were being considered for all available modification programs and an

15   affordable modified payment was forthcoming.

16   53. However, soon thereafter, Plaintiffs were again informed that their request for a loan

17   modification had been denied due to the fact that there was no change in Plaintiffs' financial

18   circumstances.

19   54. Plaintiffs immediately attempted to follow up with Defendant Wells Fargo regarding the denial;

20   however, Plaintiffs were continuously directed to contact a different representative, as their

21   assigned point of contact had changed. Plaintiffs were never connected with anyone at Wells

22   Fargo who was willing to help them or provide any information on the denial.

23   55. Thereafter, on or around March 12, 2012, Defendants executed and recorded a Notice of Trustee

24   Sale (the "NTS" or "Notice of Sale") against the Subject Property.

25   56. At this same time, Plaintiffs' minimal income could not support Plaintiffs' financial obligations

26   and living expenses. In an effort to get back on their feet financially and ultimately retain their

27   home, Plaintiffs filed for Chapter 7 Bankruptcy to relieve Plaintiffs of their personal unsecured

28   debt obligations, on April 2, 2012.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
11

57. In or around June 2012, Plaintiffs converted their Bankruptcy to a Chapter 13 to reorganize their outstanding debt and obtain a repayment plan.

58. In or around August 2012, Plaintiffs received a payment plan from their Chapter 13 Bankruptcy, but Plaintiffs could not afford the payment amounts given. Plaintiffs' Bankruptcy was dismissed on August 24, 2012.

59. Plaintiffs immediately re-filed for Chapter 13 Bankruptcy, on August 31, 2012, to try to obtain a better reorganization plan to help them with their financial hardships. Plaintiffs obtained a confirmed Plan on October 23, 2012.

60. Thereafter, Plaintiffs made the required payments under the terms of the Reorganization Plan. Meanwhile, Plaintiffs' sale date on the Subject Property continued to be postponed month-to-month.

61. As a result of Plaintiffs' Bankruptcy, disbursements were made, and approximately $13,000 was disbursed to Wells Fargo as an outstanding secured payment. In addition, Plaintiffs' 2nd mortgage with JP Morgan Chase Bank, in the amount of $70,000, was forgiven.

62. As a result, in or around December 2012, Plaintiffs contacted Defendant Wells Fargo to attempt to obtain a loan modification based on the change in their financial circumstances. However, Plaintiffs kept getting transferred to different representatives and automated systems. Plaintiffs could not get in touch with anyone from Wells Fargo who was willing to provide Plaintiffs with any assistance.

63. Finally, in or around March 2013, Plaintiffs were advised that the sale date had been cancelled due to the pending Bankruptcy. Plaintiffs continued to try to call Wells Fargo and seek mortgage assistance, and Plaintiffs were continuously unsuccessful.

64. On or around July 11, 2013, Plaintiffs' Bankruptcy was dismissed, and Plaintiffs once again, feared the imminent threat of foreclosure on their home.

65. At that point, Plaintiffs gross income was approximately $12,000 per month and Plaintiffs reasonably believed that they would qualify for a loan modification.

66. Plaintiffs attempted to contact Defendant Wells Fargo to discuss this significant decrease in their income (from the reported $16,000 previous income to the current $12,000 income);

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

1  however, Plaintiffs were never able to speak to the same representative twice, and Plaintiffs

2  were continuously transferred to voicemails and automated systems. Plaintiffs could not get any

3  assistance from Wells Fargo. Plaintiffs never even received a telephone call back from anyone

4  at Wells Fargo. The only correspondence Plaintiffs received was their monthly mortgage

5  statement.

6  67. At this time, Plaintiffs are in possession of the Subject Property and no Trustee's sale has

7  occurred. However, Defendants have recorded a Notice of Default and Plaintiffs reasonably

8  believe that Defendants will soon re-notice/re-issue a Notice of Sale. As a result, the instant

9  action became necessary.

10  68. As set forth herein, Plaintiffs have been unable to cure the default because of the substantial

11  arrearages, which include unnecessary fees added to the loan balance, and Plaintiffs have been

12  unable to negotiate a mortgage payment that they can afford. Thus, Plaintiffs have continued to

13  fall behind on their mortgage payments, ultimately resulting in foreclosure proceedings and the

14  possible eviction of Plaintiffs from their home.

15  **Defendant Wells Fargo's Failure to Evaluate Plaintiffs' Application even after a Material**

16  **Change In Financial Circumstances Under the Homeowner's Bill of Rights**

17  69. Pursuant to Civil Code §2923.6, under the California Homeowner's Bill of Rights, the mortgage

18  servicer shall evaluate a borrower's application for a foreclosure prevention alternative if the

19  borrower has not already been evaluated or afforded a fair opportunity to be evaluated for a

20  foreclosure prevention alternative, **OR**, if there has been a material change in the borrower's

21  financial circumstances and that change is documented by the borrower and submitted to the

22  mortgage servicer. In addition, the mortgage servicer, mortgagee, beneficiary, or authorized

23  agent shall not record a notice of default, or notice of sale, or conduct a trustee's sale, while the

24  complete foreclosure prevention alternative application is pending.

25  70. As alleged herein, **Plaintiffs have never been fairly evaluated for a foreclosure prevention**

26  **alternative,** including a loan modification, nor have they been afforded a fair opportunity to be

27  evaluated **and** there has been a material change in Plaintiffs' financial circumstances, and

28  **that change has been documented and submitted to Defendant Wells Fargo.**

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

13

71. Plaintiffs attempted to contact Defendant Wells Fargo numerous times to obtain mortgage assistance and to advise its representatives of the change in their financial circumstances; however, Plaintiffs were unable to speak with a representative who was willing to help them or provide them with any information regarding their account. Furthermore, to date, Defendant Wells Fargo has failed to provide Plaintiffs with a valid final determination on their loan modification application, as Plaintiffs had requested. Accordingly, Plaintiffs have not been afforded a fair opportunity to be evaluated for a foreclosure prevention alternative, and have not been fairly evaluated. **This is a direct violation of CC §2923.6.**

72. In addition, there has been a material change in Plaintiffs'' financial circumstances since the last time Plaintiffs submitted a complete application for a foreclosure prevention alternative. Specifically, Plaintiffs' household gross income has decreased to approximately $12,000 per month. In addition, Plaintiffs' 2nd mortgage in the amount of $70,000 has been forgiven and Plaintiffs are no longer making those monthly payments; however, Plaintiffs' expenses have increased as a result of higher living costs and lingering outstanding personal debt. As a result, Plaintiffs have had a material change in their financial circumstances and must be evaluated for any and all foreclosure prevention alternatives in order to receive a fair and affordable monthly mortgage payment.

73. Plaintiffs made several attempts to notify Defendant Wells Fargo of the material changes in their financial circumstances, beginning in December 2012 until the present day, however, Plaintiffs have been unable to speak to a single representative who could provide them with mortgage assistance, and Defendant Wells Fargo has failed to report or otherwise acknowledge this material change in circumstances.

74. In addition, on October 4, 2013, Plaintiffs' attorney further memorialized Plaintiffs' material change in financial circumstances by documenting and submitting these changes to Defendants Wells Fargo and NDEX West, via fax. A true and correct copy of this letter to Defendants, along with the fax confirmation sheet, is attached and incorporated hereto as **Exhibit C.**

75. Accordingly, pursuant to Civil Code §2923.6, Defendant Wells Fargo is obligated to evaluate Plaintiffs' application for any and all foreclosure prevention alternatives, including, but not

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

14

1  limited to, a loan modification, and **Defendants must not re-notice/re-issue a Notice of Sale,**

2  **and Defendants must cease all foreclosure activity on the Subject Property.**

3  76. Plaintiffs' claims are simple: when large financial institutions promise to modify eligible loans

4  to prevent foreclosures and taxpaying homeowners live up to their end of the bargain,

5  homeowners expect that promise to be kept, especially when those large financial institutions

6  are acting under the guidance of a federal program specifically targeted at preventing

7  foreclosures.

8  77. Unbeknownst to Plaintiffs, Defendants, acting as lenders, mortgage servicers, trustees, and/or

9  beneficiaries, received, and continue to receive, a financial incentive on each loan modification

10  application a borrower submits. Because of this type of incentive, Defendants benefit from

11  allowing Plaintiffs' modification request to become stale and advising Plaintiffs to resubmit

12  documents and/or re-apply for a modification, rather than actually reviewing Plaintiffs'

13  application.

14  78. Defendant Wells Fargo wrongfully delayed Plaintiffs' modification requests due to its own

15  ineffective and unreasonably slow processing systems, the financial incentives it received by

16  asking Plaintiffs to submit multiple applications, and its failure to properly train its

17  representatives to comply with Wells Fargo's obligations to borrowers under the law.

18  79. The foregoing acts and material omissions of the Defendants herein alleged were undertaken

19  willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of

20  Plaintiffs' notice and disclosure rights.

21  80. Defendants, as employers of the authorized representatives who had contact with Plaintiffs, had

22  advanced knowledge of the unfitness of the employee representatives and employed such

23  representatives with a conscious disregard of the rights or safety of others, or authorized/ratified

24  the wrongful conduct for which the damages are awarded or was personally guilty of

25  oppression, fraud, or malice.

26  81. Defendants are corporate employers. As such, their officers, directors, and/or managing agents

27  had advanced knowledge of the willful and despicable conduct herein alleged and ratified the

28  aforementioned acts of their authorized representatives and employees.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

82. Plaintiffs **have been harmed** by Defendants' failure to provide accurate material disclosures and notices such that Plaintiffs can cure any alleged default and extinguish the transaction by operation of law.

83. Defendants are acting in concert to deprive Plaintiffs of their civil rights by attempting to take the Subject Property without due process of law.

84. Plaintiffs are ready, willing and able to enter into a loss mitigation program that is affordable for Plaintiffs and more profitable to Defendants than a foreclosure, and Plaintiffs are ready, willing and able to make such payments at the times required of them by law.

## VII.

### FIRST CAUSE OF ACTION

### VIOLATIONS OF CAL. CIV. CODE §2923.6

### (AS TO ALL DEFENDANTS)

85. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

86. As of January 1, 2013, the new California Homeowner's Bill of Rights, specifically Civil Code §2923.6, applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower as indicated in loan documents. In this case, the Subject Property contains no more than four (4) dwelling units and is the principal residence of Plaintiffs, as indicated in their loan documents.

87. Pursuant to Civil Code §2923.6(g), under the California Homeowner's Bill of Rights, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

16

88. As alleged herein, Plaintiffs have not been fairly evaluated, nor have they had a fair opportunity to be evaluated for a foreclosure prevention alternative, including a loan modification. Defendant Wells Fargo has failed to communicate with Plaintiffs regarding the status of their loan modification application and to explore Plaintiffs' options to avoid foreclosure. To date, Defendant Wells Fargo has failed to notify Plaintiffs of a valid final determination on their loan modification application.

89. Plaintiffs have consistently attempted to work with Defendant Wells Fargo on foreclosure prevention options; however, Wells Fargo has refused to fairly consider Plaintiffs' application and instead urged Plaintiffs to submit multiple applications thereby prolonging the purported review period and forcing Plaintiffs further into default.

90. Furthermore, as set forth herein, Defendants were advised that Plaintiffs have experienced a material change in financial circumstances since the date of their prior application. Specifically, Plaintiffs' household gross income has decreased to approximately $12,000 per month. In addition, Plaintiffs' 2nd mortgage in the amount of $70,000 has been forgiven and Plaintiffs are no longer making those monthly payments; however, Plaintiffs' expenses have increased as a result of higher living costs and lingering outstanding personal debt. As a result, Plaintiffs have had a material change in their financial circumstances and must be evaluated for any and all foreclosure prevention alternatives in order to receive a fair and affordable monthly mortgage payment.

91. Plaintiffs made several attempts to notify Defendant Wells Fargo of the material changes in their financial circumstances, beginning in December 2012 until the present day, however, Plaintiffs have been unable to speak to a single representative who could provide them with mortgage assistance, and Defendant Wells Fargo has failed to report or otherwise acknowledge this material change in circumstances.

92. In addition, on October 4, 2013, Plaintiffs' attorney further memorialized Plaintiffs' material change in financial circumstances by documenting and submitting these changes to Defendants Wells Fargo and NDEX West, via fax. A true and correct copy of this letter to Defendants, along with the fax confirmation sheet, is attached and incorporated hereto as Exhibit C.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

93. Pursuant to Civil Code §2923.6(g), Wells Fargo is obligated to evaluate Plaintiffs' application for any and all foreclosure prevention alternatives, including, but not limited to, a loan modification.

94. In addition, Civil Code §2923.6(c) prohibits "dual tracking." A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale while a complete first lien loan modification application is pending. Therefore, **Defendants must not re-issue/re-schedule a Trustee's Sale, and Defendants must cease all foreclosure activity on the Subject Property**, while the review of Plaintiffs' application is pending.

95. Defendant Wells Fargo was, and currently remains, in possession of Plaintiffs' application, and as previously mentioned, Wells Fargo has been notified of Plaintiffs' material financial changes. However, despite these facts, Defendant has not agreed to fairly review and evaluate Plaintiffs' complete application for any and all available foreclosure prevention alternatives. In fact, Defendants are proceeding with foreclosure activity on the Subject Property, there is an active NOD, and Plaintiffs reasonably believe that Defendants will soon re-notice and/or re-schedule a Trustee's Sale. **These are clear violations of California Civil Code §2923.6(g)**.

96. The intent of the California Legislature in enacting the Homeowner's Bill of Rights was to address the consequences of the subprime mortgage crisis leading to declining real property values and historic levels of foreclosure. Given the vast and devastating impact of the crisis, the objective of the Bill of Rights was to make sure lenders, loan servicers, and their agents were communicating and working with borrowers in default to assess the borrowers' financial situation and discuss foreclosure alternatives before a foreclosure is initiated by recording a notice of default. The intent of the legislature is clear and the requirements that it has imposed are by no means arbitrary.

97. Defendants' failure to comply with Civil Code §2923.6 directly undermines the intent of the statute. This failure to adhere to the statute renders it essentially meaningless and, if the statue is not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being rendered helpless. As a result, Defendants are liable to Plaintiffs for any and all statutory and/or

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
18

1  actual damages which have resulted from their conduct.

2  98. In addition, Plaintiffs have incurred costs associated with the foreclosure action since its

3  commencement, and Plaintiffs have sought, and now seek, to be fairly evaluated for a

4  foreclosure prevention alternative, including, but not limited to, a loan modification, pursuant to

5  the California Homeowner's Bill of Rights.

6  99. As a result of the above-described wrongful acts and omissions, Plaintiffs have been precluded

7  from the rights granted by Civil Code §2923.6.

8  ## VIII.

9  ## SECOND CAUSE OF ACTION

10  ## NEGLIGENCE

11  ## (AS TO ALL DEFENDANTS)

12  100. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in

13  this cause of action.

14  101. At all times relevant herein, Defendants, acting as Plaintiffs' lender, mortgage servicer and

15  beneficiary to Plaintiffs' loan, had a reasonable duty to exercise reasonable care and skill to

16  maintain proper and accurate loan records, and to discharge and fulfill the other incidents

17  attendant to the maintenance, accounting and servicing of loan records, including, but not

18  limited to:

19  a. Keeping an accurate accounting of Plaintiffs' mortgage payments, credits, and debits;
   b. Disclosing to Plaintiffs the status of any foreclosure actions taken by Defendants;

20  c. Refraining from taking any action against Plaintiffs that they did not have the legal
   authority to do; and

21  d. Providing Plaintiffs with all relevant information regarding the Loan.

22  102. In addition, Defendant Wells Fargo stepped outside its conventional duties as a lender and

23  servicer and assumed additional responsibilities when it dispatched letters advertising its

24  mortgage assistance programs and undertook efforts to consider borrowers, including Plaintiffs,

25  for loss mitigation options, including, but not limited to, loan modifications.

26  103. Those additional responsibilities include relaying accurate and timely information to borrowers

27  about the status of their loan, the proper implementation of available foreclosure prevention

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
19

1  alternatives and the provisions of the California Homeowner's Bill of Rights, so that Plaintiffs

2  would be properly and fairly evaluated for a suitable foreclosure prevention alternative,

3  including, but not limited to, a loan modification.

4  104. When Defendant Wells Fargo engaged in the servicing of Plaintiffs' Loan, its actions of

5  assuming additional responsibilities in addition to reviewing Plaintiffs for a modification, were

6  intended to affect Plaintiffs and their property because Plaintiffs was in direct contact and

7  negotiation with Wells Fargo, Defendant Wells Fargo's representations were made directly to

8  Plaintiffs, and those representations were likely to, and intended to, affect Plaintiffs' decision

9  making with respect to their property.

10  105. Plaintiffs allege, on information and belief, that the harm to Plaintiffs was a foreseeable result of

11  Defendants' negligence, given Defendants' numerous verbal promises, and Plaintiffs' justifiable

12  reliance on those promises by foregoing alternative options to avoid foreclosure.

13  106. Had Plaintiff known that their home would be referred to foreclosure despite complying with

14  the loan modification process, and despite Defendants' statements to them that they would

15  receive a permanent modification and no foreclosure sale would occur, Plaintiffs could have and

16  would have taken alternative action to avoid foreclosure.

17  107. Furthermore, the terms of the California Homeowner's Bill of Rights and other statutory law in

18  effect, have imposed additional duties on Defendants as set forth herein which include: initiating

19  contact and evaluate Plaintiffs for any and all foreclosure prevention alternatives prior to taking

20  steps to foreclosure, evaluating Plaintiffs for foreclosure alternatives when notified of a material

21  change in Plaintiffs' financial circumstances, and refraining from instituting foreclosure

22  proceedings while Plaintiffs are in review for a foreclosure prevention alternative, all as alleged

23  herein.

24  108. Plaintiffs allege, on information and belief, that Defendants breached their duty of care and skill

25  to Plaintiffs, in the servicing of Plaintiffs' loan by, among other things:

26      a.  "Dual-tracking" Plaintiffs toward foreclosure during the purported loan modification

27          "review" in violation of the Homeowner's Bill of Rights and despite firm assurances that

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

1      no foreclosure activity would take place against the Subject Property while Plaintiffs'

2      loan modification application was in review;

3      b.  Engaging in a pattern and practice of making promises to Plaintiffs that Defendants'

4          representatives knew would not be honored;

5      c.  Failing to fairly evaluate Plaintiffs' loan for an alternative to foreclosure, including a

6          loan modification, even after a *material change in the borrowers' financial*

7          *circumstances* has been documented and submitted to the mortgage servicer, pursuant to

8          Civil Code §2923.6(g);

9      d.  Sending Plaintiffs false and misleading advertisements misrepresenting the availability

10         of options to save Plaintiffs' home and leading Plaintiffs to believe Wells Fargo would

11         and could qualify Plaintiffs for a foreclosure prevention plan and avoid a trustee's sale

12         all in a matter of days;

13      e.  Failing to sufficiently train loss mitigation staff and failure to maintain adequate systems

14         for tracking borrower documents and information that are relevant to foreclosure and

15         loss mitigation, so that Plaintiffs could receive consistent and accurate information from

16         one phone call to the next, and the like;

17      f.  Failing to notify Plaintiffs that they were foreclosing on the Subject Property, while, in

18         fact, telling Plaintiff the opposite, ultimately confusing and misleading Plaintiff; and

19      g.  Foreclosing on the Subject Property without having the legal authority to do so.

20  109. Plaintiffs allege, on information and belief, that as a result of Defendants' negligence, Plaintiffs

21      have suffered from (i) substantial arrearages, which include additional and unnecessary interest

22      and fees; (ii) an adverse effect on their credit scores; (iii) a loss of the equity in their home; and

23      (iv) being precluded from their rights and protections under the Homeowner's Bill of Rights.

24  110. Plaintiffs allege, on information and belief, that Plaintiffs' injury was a direct result of

25      Defendants' negligent conduct, as Defendant's misrepresentations of the availability of

26      obtaining a foreclosure prevention alternative was a significant factor in causing Plaintiffs'

27      injuries. Had Plaintiffs known that Defendants would ultimately foreclose on their property,

28      they would have sought alternative relief to prevent foreclosure and not relied on Defendants'

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
21

1   promises of a loan modification.

2   111. Plaintiffs allege, on information and belief, that Defendants are responsible for Plaintiffs' injury

3   due to the fact that Defendants benefited from denying Plaintiffs' requests for a foreclosure

4   prevention alternative. In addition, Plaintiffs were subjected to illegal "dual-tracking," as

5   Defendants knowingly initiated foreclosure proceedings even though Plaintiffs' complete

6   application for a loan modification was in review.

7   112. Plaintiffs allege, on information and belief, that the policy of preventing future harm favors

8   imposing a duty of care on an entity in Defendants' positions. In fact, this is evidenced by the

9   fact that the State of California, through legislation, has enacted the new Homeowner's Bill of

10   Rights, which became effective on January 1, 2013, in an effort to prevent future harm from

11   unnecessary and wrongful foreclosures.

12   113. Plaintiffs are informed and believe, and on that basis, allege that had Defendants used proper

13   skill and care in the handling of Plaintiffs' matter, Plaintiffs would have had a fair opportunity

14   to avoid foreclosure proceedings, and Plaintiffs would have been able to enter into a loan

15   modification that was affordable for Plaintiffs and more profitable to Defendants than a

16   foreclosure.

17   114. As a direct and proximate result of the negligence and carelessness of Defendants and their

18   representatives as set forth above, Plaintiffs have suffered, and continue to suffer, general and

19   special damages in an amount to be determined at trial.

20   ## IX.

21   ### THIRD CAUSE OF ACTION

22   ### VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200

23   ### (AS TO ALL DEFENDANTS)

24   115. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in

25   this cause of action.

26   116. Plaintiffs bring this action against Defendants pursuant to California Business and Professions

27   Code §17200, et seq., referred to as the Unfair Competition Law (the "UCL").

28   117. California Business and Professions Code §17200 prohibits "any unlawful, unfair or fraudulent

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

22

Exhibit A to Notice of Removal
Page 37

1    business act or practice." For the reasons described herein, Defendants have engaged in unfair

2    or fraudulent business acts or practices in violation of Bus. and Prof. Code §17200, *et. seq.*

3    118. The Court has jurisdiction over this action pursuant to California Bus. and Prof. Code §17200,

4    *et seq.*, specifically Bus. and Prof. Code §17203, which provides that any person who engages,

5    has engaged, or proposes to engage in unfair competition may be enjoined in any court of

6    competent jurisdiction; and the court may make such orders or judgments, including the

7    appointment of a receiver, as may be necessary to prevent the use or employment by any person

8    of any practice which constitutes unfair competition, or as may be necessary to restore to any

9    person in interest any money or property, real or personal, which may have been acquired by

10    means of such unfair competition; and Bus. and Prof. Code §17204, which provides for actions

11    for any relief pursuant to the Unfair Competition Law ("UCL") to be prosecuted exclusively in a

12    court of competent jurisdiction by any board, officer, person, corporation or association, or by

13    any person acting for the interests of itself, its members or the general public.

14    119. At all times relevant to this Complaint, Defendants were lenders/trustees in the business of

15    providing residential mortgages to the general public and were acting within the scope of that

16    business with regard to the loan provided to Plaintiffs. Defendants have committed acts of unfair

17    competition as proscribed by §17200 including the practices alleged herein against Plaintiffs.

18    120. Specifically, as fully set forth above, Defendants engaged in deceptive business practices with

19    respect to mortgage loan servicing, foreclosure of residential properties and related matters by,

20    among other things:

          a.  Violating the Homeowner's Bill of Rights by "dual-tracking" Plaintiffs, and initiating

21

             and continuing foreclosure proceedings on the Subject Property while Plaintiffs'

22

             application for a foreclosure prevention alternative was in "review;"

23          b.  Engaging in a pattern and practice of instructing borrowers, including Plaintiffs, to

24             default on their mortgage obligation in order to be considered for a loan modification or

25             other work out option;

26          c.  Recording a Notice of Default, a Notice of Sale, and proceeding with foreclosure on the

27             Subject Property without complying with Civil Code §2923.6(g), by failing to fairly

28             evaluate Plaintiffs' complete application, or afford Plaintiffs a fair opportunity to be

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit A to Notice of Removal
Page 38

evaluated, for foreclosure prevention alternatives, even after there has been a **material change in Plaintiffs' financial circumstances;**

d.  Failing to provide Plaintiffs with a consistent single point of contact, as required by Civil Code §2923.7;

e.  Making misrepresentations and false promises designed to deceive Plaintiffs into thinking that they were safe from foreclosure if they were compliance with the loan modification review process and "in review" for a foreclosure prevention alternative;

f.  Misrepresenting and making false promises to Plaintiffs that they would be receiving a loan modification when Defendants knew or should have known that was not true;

g.  Sending Plaintiffs false and misleading advertisements misrepresenting the availability of options to save Plaintiffs' home and leading Plaintiffs, and other similarly situated borrowers, to think that they could save their home in a matter of days if they just call Wells Fargo for help;

h.  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

i.  Misrepresenting the foreclosure status to Plaintiffs regarding the Subject Property;

j.  Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs' account; and

k.  Foreclosing on the Subject Property without the legal authority to do so.

121. In addition, Bus. and Prof. Code §17200 prohibits any "fraudulent business act or practice." Defendants' concealment of material facts, as set herein, was misleading and likely to deceive the public within the meaning of this section. This concealment was made with knowledge of its effect, and was done to induce Plaintiffs to pay the marked-up and/or unnecessary fees for default-related services.

122. Moreover, in the course and conduct of its loan servicing and collection, Defendants omitted a true itemization that identifies the nature of each fee, and they failed to disclose the nature of the charges and fees assessed. Defendants concealed the fact that the category identified as "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were never incurred by Defendants. Relying on Defendants, Plaintiffs and members of the general public believe they are obligated to pay the amounts specified in Defendants' communications for default-related services.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD, STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

24

123. Plaintiffs relied on their reasonable expectation that Defendants complied with the plain meaning of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans, and as a result, Plaintiff relied on Defendants' disclosures about the fees on their statements, reasonably believing the "Other Charges," "Other Fees" or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, to trick borrowers into a sense of trust and to dissuade them from challenging Defendants' unlawful fee assessments, Defendants conceal their scheme by telling borrowers, in statements and other documents, that such fees are "allowed by borrowers' Note and Security Instrument," or that they are "in accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiffs, they would have been aware of the mark-ups and unnecessary nature of the fees, and Plaintiffs would have disputed the charges, and not paid them.

124. These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior. Defendants' actions were against public policy, as such actions precluded Plaintiffs from the opportunity to be considered for a loan modification or other foreclosure prevention alternative.

125. Furthermore, by offering assistance and leading borrowers to believe such assistance is being considered while the foreclosure process is underway is an irreparable injury to Plaintiffs after Plaintiffs have **relied on** Defendants' offer to assist them with their mortgage. This has prevented Plaintiffs from pursuing other workout options such as deed in lieu of foreclosure, short sale, repayment plan, and the like. Furthermore, the false promises and false statements of Defendants, and each of them, were designed to unfairly prejudice Plaintiffs and profit from Plaintiffs' loss by dual tracking Plaintiffs toward foreclosure during the purported modification review process, in violation of the law.

126. Defendants' acts and practices, as hereinabove alleged, constitute "unlawful" practice because they violate Title 18 United States Code §1341, §1343, and §1962, California Civil Code §1572, §1573, §1709, §1710, and §1711, and the common law.

127. Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under Bus. and Prof. Code §17200, *et seq.*, in that said acts and practices offend public policy and are

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE.150
NEWPORT BEACH, CA 92660

Exhibit A to Notice of Removal
Page 40

1    substantially injurious to Plaintiffs and all consumers. Said acts and practices have no utility

2    whatsoever; much less sufficient utility to outweigh the substantial harm to Plaintiffs, other

3    consumers, and potential homeowners.

4    128. Defendants' acts and practices, as hereinabove alleged, constitute "fraudulent" business acts

5    under §17200 in that said acts and practices are likely to deceive the public and affected

6    consumers' legal rights and obligations. Defendants' acts, including, but not limited to, active

7    deception, falsifying documents, failing to deliver material documents, and concealment, may

8    preclude consumers from exercising rights to which they are entitled.

9    129. Defendants knew, or by the exercise of reasonable care, should have known, that the

10    representations by their representatives as herein alleged were violations of the California

11    Homeowner's Bill of Rights, and other common law in effect.

12    130. Plaintiffs are informed and believe, and based thereon, allege that the illegal acts of Defendants

13    are a serious threat to Plaintiffs because these acts have allowed, or will allow, Defendants to

14    wrongfully foreclose on the Subject Property, to transfer title to or interest in the Subject

15    Property, and to cause the imminent eviction of Plaintiffs from their home. Because of

16    Defendants' illegal actions, Plaintiffs will be forced out of their home. Such eviction will cause

17    Plaintiffs to suffer further immediate and irreparable injury, loss, and damage.

18    131. As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct alleged

19    herein, Plaintiffs are in imminent risk of losing their home. The imminent threat and risk of

20    foreclosure constitutes injury-in-fact because it is concrete and particularized as to the property

21    in question and initiation of foreclosure proceedings puts Plaintiffs' interest in the Subject

22    Property sufficiently in jeopardy to constitute injury under §17200.

23    132. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct alleged

24    herein, Plaintiffs have lost equity in their home. Defendants' charging of marked up and excess

25    fees has resulted in damage to Plaintiffs' tangible interest in the Subject Property. This loss of

26    equity, which should be credited back to Plaintiffs, constitutes a loss of money.

27    133. Due to Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs have suffered

28    severe a substantial ascertainable loss, and therefore, Defendants should be enjoined from

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

26

1    continuing such practices pursuant to Business and Professions Code §17203 & §17204.

2    134. As a direct, proximate, and foreseeable result of the unlawful conduct of Defendants, their

3    business acts or practices have caused injury to Plaintiffs; and Plaintiffs are entitled to relief,

4    including full restitution and/or disgorgement of all revenues, earnings, profits, compensation,

5    and benefits which may have been obtained by Defendants as a result of such business act or

6    practice.

7    135. In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

8    constructive trust over, and restitution of, the monies collected and realized by Defendants.

9

## X.

## DEMAND FOR ACCOUNTING

11    136. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in

12    this cause of action.

13    137. The elements for a claim for accounting are: (i) a fiduciary relationship or other circumstances

14    appropriate to the remedy, and (ii) a balance due from Defendant to Plaintiffs that can only be

15    ascertained by an accounting.

16    138. Defendants have held themselves out to be Plaintiffs' creditor and mortgage servicer. As a result

17    of this purported relationship with Plaintiffs, said Defendants have a duty to Plaintiffs to

18    properly account for payments made by Plaintiffs. Moreover, a fiduciary relationship between

19    the parties is not required to state a cause of action for accounting. All that is required is that

20    some relationship exists that requires an accounting.

21    139. The mortgage contract between Defendants and Plaintiffs allows Defendants to pay for default-

22    related services when necessary or appropriate, and to be reimbursed by the borrowers, but it

23    does not authorize Defendants to mark-up the actual cost of those services to make a profit, nor

24    does it allow Defendants to incur unnecessary fees.

25    140. Nevertheless, it is alleged, on information and belief, that Defendants mark-up prices charged

26    by vendors and then, without disclosing the mark-up, assess borrowers' accounts for the higher,

27    marked-up fee, so Defendants can earn a profit.

28    141. Defendants are aware that it is improper to mark-up and/or assess unnecessary fees on

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

27

borrowers' accounts for default-related services. Therefore, Defendants fraudulently conceal these fees on borrowers' accounts, omitting any information about Defendants' additional profits, by identifying them on mortgage statements only as "Other Charges," "Other Fees," "Miscellaneous Fees" or "Corporate Advances."

142. Plaintiffs have made mortgage payments to Defendants and their successors since 2005. Plaintiffs believe and are informed that the amount claimed due and owing at the time of the recording of the Notice of Default of $18,725, is not correct.

143. Plaintiffs have a reasonable good faith belief that the claimed arrearages include improper excess charges and fees imposed by all Defendants without Plaintiffs' knowledge or consent, which are not allowed by law.

144. It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein. Therefore, these monies are due to be either credited back to Plaintiffs in full, or credited to the rightful owner of Plaintiffs' Note and Mortgage.

145. The actual amount of the arrearages on Plaintiffs' loan and the actual amount of money due from Defendants to Plaintiffs, and vice versa, are unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.

///

///

## **PRAYER**

**WHEREFORE, Plaintiffs pray for judgment against each Defendant, jointly and severally, as follows:**

1. For damages sustained by Plaintiffs due to Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

2. Pursuant to Cal. Bus. & Prof. Code §17200, *et seq.,* that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them, be

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
28

permanently enjoined from making any false or misleading statements or falsely reporting negative credit to reporting agencies, and from selling the foreclosed property on an unlawfully procured debt;

3. Pursuant to Cal. Bus. & Prof. Code §17200, *et seq.*, that this Court make such orders or judgments necessary to prevent the use or employment by any Defendant of any act which violates §17200, *et seq.*; and to restore to any person in interest, any money or property, real or personal, which may have been acquired by means of any such act;

4. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

5. For interest on the sum at the rate of 10% per annum;

6. For punitive damages against Defendants due to their intentional and wrongful acts;

7. For all relief granted under California Civil Code §2924.12(b);

8. For reasonable attorney's fees and costs of suit, as allowed by law, and all other relief granted under Civil Code §2924.12(i);

9. For injunctive relief as set forth herein; and

10. For such other and further relief as this Court deems just and appropriate.

Dated: October 10, 2013

LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

By: _____
Joseph R. Manning Jr., Esq.
Attorney for Plaintiffs

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit A**

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
30

Branch :WRC,User :3017       Comment:       Station Id :KS10

ORT-703'2836'37

**RECORDING REQUESTED BY:**
WORLD SAVINGS BANK

**WHEN RECORDED MAIL TO:**
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0040035685

NOTE AMOUNT: $456,000.00

120-452-019-2

DOC # 2005-0027173
01/11/2005 08:00A Fee:78.00
Page 1 of 24
Recorded in Official Records
County of Riverside

Assessor, County Clerk & Recorder

| M | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC |
|---|---|---|---|---|---|---|---|---|
| | | 24 | | | | | | |
| A | R | L | | | COPY | LONG | REFUND | NCHG | EXAM |

**DEED OF TRUST**

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR BIWEEKLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $570,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
    (A)  Security Instrument. This Deed of Trust, which is dated January 3, 2005, will be called the "Security Instrument."

    (B)  Borrower. JAMES T. WILLIAMS AND STEPHANIE WILLIAMS, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

    (C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is A FEDERAL SAVINGS BANK which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .



LENDER'S USE ONLY

SD001A (2004-03-1)       DEED OF TRUST-ADJUSTABLE    CA
                    Page 1

Exhibit A to Notice of Removal
Page 46

0040035695

(D)  **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S.  $455,000.00 ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in full by January 24, 2035.

(E)  **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)  **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)  **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H)  **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and Golden West Savings Association Service Co., A California Corporation is the "Trustee."

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)  pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)  keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)   The property which is located at 1915 NIGHT HAWK CIRCLE, CORONA, CA 92881-8689. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)  All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-1)                    DEED OF TRUST-ADJUSTABLE                    CA
DEFERRED INTEREST                    Page 2

**Exhibit A to Notice of Removal
Page 47**

Branch :WRC,User :3017                    Comment:                    Station Id :KSI0

0040035695

    (iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

    (iv)   All rents or royalties and other income from the Described Property;

    (v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

    (vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

    (vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

    (viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

    (ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

    (x)   All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows:

**1.   BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.   PAYMENTS FOR TAXES AND INSURANCE**

    **(A)   Borrower's Obligations**

        I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

RIVERSIDE,CA
Document: TD 2005.27173

Printed on 10/2/2013 11:19:49 AM

Branch :WRC,User :3017                    Comment:                                    Station Id :KS10

0040035685

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 26, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-1)                      DEED OF TRUST-ADJUSTABLE                              CA
                                              Page 4

**Exhibit A to Notice of Removal
Page 49**

Branch :WRC,User :3017                    Comment:                              Station Id :KSIO

0040035685

**3.   APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgage Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD0001B (2004-03-1)                    DEED OF TRUST-ADJUSTABLE                         CA
                                              Page 5

**Exhibit A to Notice of Removal
Page 50**

Branch :WRC,User :3017                     Comment:                                    Station Id :KSI0

0040035685

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.   **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-1)                       DEED OF TRUST-ADJUSTABLE                          CA
                                              Page 8

**Exhibit A to Notice of Removal
Page 51**

Branch :WRC,User :3017                    Comment:                         Station Id :KSIO

0040035585

**7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.    LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the Property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-1)                    DEED OF TRUST-ADJUSTABLE              CA
                                            Page 7

**Exhibit A to Notice of Removal
Page 52**

0040035685

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

(A)    Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

(B)    Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-05-1)                    DEED OF TRUST-ADJUSTABLE                    CA
                                              Page 8

Exhibit A to Notice of Removal
Page 53

0040035685

13.    **LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

14.    **NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 1015 NIGHT HAWK CIRCLE, CORONA, CA 92881-8689. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

15.    **GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

16.    **BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

17.    **LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property, (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (I) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (II) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

**Exhibit A to Notice of Removal
Page 54**

Branch :WRC,User :3017                    Comment:                                    Station Id :KS10

0040035685

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-1)                    DEED OF TRUST-ADJUSTABLE
                                              Page 10                                              CA

**Exhibit A to Notice of Removal
Page 55**

Branch :WRC,User :3017                  Comment:                                    Station Id :KSIO

0060033605

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of Incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.   FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

BD001K (2004-03-1)              DEED OF TRUST-ADJUSTABLE                             CA
                                        Page 11

**Exhibit A to Notice of Removal
Page 56**

Branch :WRC,User :3017          Comment:          Station Id :KSIO

0040035685

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

    _Acceleration of Payment of Sums Secured._ Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

    If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

    _Exception to Acceleration of Payment of Sums Secured._ If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

        (i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

        (ii)   Lender approves the creditworthiness of the transferee in writing;

        (iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

        (iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

        (v)   the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

    The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.   SUBSTITUTION OF TRUSTEE**

    I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

**Exhibit A to Notice of Removal
Page 57**

Branch :WRC,User :3017                     Comment:                              Station Id :KSJ0

0040035685

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-1)              DEED OF TRUST-ADJUSTABLE                                        CA
                                       Page 13

**Exhibit A to Notice of Removal
Page 58**

Branch :WRC,User :3017                    Comment:                                    Station Id :KSJO

0040035685

**31.    (    )   QUICK QUALIFYING LOAN PROGRAM**

    I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

    Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.


    **( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**


**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**


SD001N (2004-03-1)                    DEED OF TRUST-ADJUSTABLE                            CA
                                              Page 14

**Exhibit A to Notice of Removal
Page 59**

Branch :WRC,User :3017        Comment:        Station Id :KS10

0040036695

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____ (Seal)
JAMES  T.  WILLIAMS

_____ (Seal)
STEPHANIE WILLIAMS

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_    ss.

On _1-3-05_ before me, _Laurene E. Alvarez, notary public_ personally appeared _James T Williams and Stephanie Williams_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

LAURENE E. ALVAREZ
Commission # 1379193
Notary Public - California
Los Angeles County
My Comm. Expires Oct 8, 2006

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)    [AF1 (2004-03-1)]    [AL1 (2004-03-1)]    Page 16    CA

Exhibit A to Notice of Removal
Page 60

Branch :WRC,User :3017                    Comment:                         Station Id :KSI0

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"
## LEGAL DESCRIPTION

**LOAN NO. 0040035685**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF RIVERSIDE STATE OF
CALIFORNIA, DESCRIBED AS FOLLOWS:

TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.

SD001 (2003-03-1)                    Page 16 of 18                    CA

Exhibit A to Notice of Removal
Page 61

Branch :WRC,User :3017                    Comment:                              Station Id :KS10

# EXHIBIT "A"

ORDER NO.  2607032836-37

LOT 24 OF TRACT NO. 28958-3, IN THE CITY OF CORONA, COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 282 PAGE(S)
73 TO 76 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

Exhibit A to Notice of Removal
Page 62

Branch :WRC,User :3017                Comment:                          Station Id :KSI0

# RIDER TO SECURITY INSTRUMENT
## AND MODIFICATION TO NOTE
### Fixed Rate Option Feature

**DATE: January 3, 2005**                    **LOAN NUMBER: 0040935685**

**FOR VALUE RECEIVED**, the undersigned (the "Borrower") agrees that the following provisions shall be incorporated into the Note and Security Instrument of even date herewith which were executed by the Borrower. The Security Instrument was executed by the Borrower and creates a lien in favor of **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES** ("Lender").

This Rider to Security Instrument and Modification to Note ("Rider and Modification") is attached to the Security Instrument. To the extent that the provisions of this Rider and Modification are inconsistent with the provisions of the Note and the Security Instrument, the provisions of this Rider and Modification shall prevail and shall supersede any such inconsistent provisions in the Note and the Security Instrument. Except to the extent modified by this Rider and Modification and other rider(s) and modification(s), if any, the provisions of the Note and the Security Instrument shall remain in full force and effect. Any capitalized term not defined in this Rider and Modification shall have the meaning given to such term in the Note or the Security Instrument.

SD448A (2004-03-1)                Page 1                      CA          **LENDER'S USE ONLY**

Exhibit A to Notice of Removal
Page 63

0040035685

**A.**    **Conversion Option; Conversion Period**

The Borrower has the right to convert the adjustable rate of interest under the Note to a fixed rate of interest (the "Conversion Option") at any time beginning on the first regularly scheduled payment due date following the date the Borrower could first prepay the loan in full without paying a prepayment charge under the terms of the Note, and continuing until the day immediately prior to the seventh anniversary of the Borrower's first regularly scheduled payment due date under the Note (the "Conversion Period"). Unless exercised by the Borrower during the Conversion Period, the Conversion Option will expire and the adjustable interest rate provisions in the Note will remain in full force and effect. Once the Borrower exercises the Conversion Option, the Note cannot later be converted back to an adjustable interest rate.

If the Borrower's loan is payable in biweekly installments, and if the Borrower exercises the Conversion Option, the Borrower's payment schedule under the Note will automatically convert to monthly installments and the loan will be due in full on the non-accelerated Maturity Date stated in the Note.

**B.**    **Conditions to Exercising the Conversion Option**

The Borrower can exercise the Conversion Option only if the Borrower has: (i) made all of the payments due under the Note and the Security Instrument prior to the exercise of the Conversion Option; (ii) made no more than two (2) payments under the Note more than 15 days after their regularly scheduled due dates during the 12-month period immediately preceding the exercise of the Conversion Option; and (iii) met all other terms and conditions of the Note and the Security Instrument.

**C.**    **Calculating the Fixed Rate**

The fixed rate of interest that will apply upon the exercise of the Conversion Option (the "Conversion Rate") will be calculated by adding 1.000 percentage points to the then current Federal National Mortgage Association's required net yield for 30-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments [expressed as a percentage] (the "FNMA Rate"). This calculation will be made at the time and in the manner described in paragraph D of this Modification and Rider. Any periodic interest rate change limitation in the Note will not apply to the fixed rate conversion, but in no event will the Conversion Rate be higher than the lifetime interest rate cap set forth in the Note.

The Borrower understands that the FNMA Rate fluctuates and that the fixed rates available during the Conversion Period may be substantially higher than the fixed rate available at the time the Borrower's loan is made. In the event the FNMA Rate is no longer quoted, the Lender will select an alternative rate source.

SD4433 (2004-03-2)     [801 (2004-03-2)]         Page 2              CA
BROKERS COMPENSATION

Branch :WRC,User :3017                    Comment:                              Station Id :KSI0

0060028685

The Borrower may ask for the then current FNMA Rate by calling the Lender's fixed rate conversion representatives at the toll-free customer service number given on the Borrower's monthly statement.

**D.      Exercising the Conversion Option**

To exercise the Conversion Option, the Borrower will take and complete the following steps before the end of the Conversion Period.

### 1. Lock-in the Fixed Conversion Rate

The Borrower will first obtain a Conversion Rate from the Lender by calling the Lender's fixed rate conversion representatives at the toll-free customer service number given on the Borrower's most recent monthly statement. The Lender will calculate the Conversion Rate as of that day, using the last quoted FNMA Rate from the immediately preceding business day. The Conversion Rate will be binding on the Borrower and the Lender for fourteen (14) days (the "Exercise Period") following the Borrower's telephone confirmation of the desire to exercise the Conversion Option.

### 2. Notice to Convert; Conversion Fee

After the Borrower obtains the Conversion Rate in the manner set forth above, the Lender will furnish the Borrower with a written notice to convert (the "Conversion Notice"). The Borrower will sign the Conversion Notice and return it to the Lender along with a conversion fee of U.S. $200.00 (the "Fee"). Notwithstanding any notice provision to the contrary in the Note or the Security Instrument, the Conversion Option will be exercised only if the Conversion Notice and Fee are actually received at World Savings, Attn: Customer Service Administration, 4101 Wiseman Boulevard, Bldg. 108, San Antonio, Texas 78251, or at such other address as designated by the Lender in the Conversion Notice, prior to the end of the Exercise Period; otherwise, the Borrower must obtain a new Conversion Rate and start a new Exercise Period. The Borrower bears all risk of delivery, including, without limitation, the risks of non-delivery, misdelivery, loss or destruction.

Notwithstanding anything to the contrary in this Rider and Modification, if the Borrower fails for any reason to exercise the Conversion Option in the manner described above after obtaining three (3) Conversion Rates and Exercise Periods, the Conversion Option will terminate and can no longer be exercised.

SD443C (2004-03-1)                        Page 3                                CA

**Exhibit A to Notice of Removal
Page 65**

0040035695

**E.     New Monthly Payment Amount**

The Lender will calculate the Borrower's new monthly principal and interest payment after receiving the signed Conversion Notice and Fee during the Conversion Period. The Borrower's new monthly payment will be an amount sufficient to pay, in substantially equal payments by the Maturity Date, the unpaid principal balance of the Note (including any Deferred Interest) plus interest charged at the Conversion Rate. The payment change limitations in the Note do not apply to the fixed rate conversion.

If the Lender receives the Conversion Notice and Fee fifteen (15) days or more before the last day of the calendar month in which the Conversion Notice and Fee are received, unpaid principal will accrue interest at the Conversion Rate beginning on the fifteenth (15th) day of the following calendar month. If the Lender receives the Conversion Notice and Fee less than fifteen (15) days before the last day of the calendar month in which the Conversion Notice and Fee are received, unpaid principal will accrue interest at the Conversion Rate beginning on the fifteenth (15th) day of the second following calendar month. The date on which the Conversion Rate is first in effect is called the "Conversion Date." Interest will continue to accrue on unpaid principal in accordance with the adjustable interest rate provisions of the Note up to, but not including, the Conversion Date. The Borrower will continue to make all regularly scheduled biweekly payments in accordance with the adjustable interest rate provisions of the Note through and including any payment that falls due on the Conversion Date. Interest that accrues at the adjustable rate from the last scheduled biweekly payment until the Conversion Date will be added to principal and interest on it will accrue at the Conversion Rate. The Borrower's first monthly installment payment will be due one month from the Conversion Date. Subsequent monthly payments will be due on the same day of each following month.

*For example, if the Lender receives the Conversion Notice and Fee on March 10, which is more than fifteen (15) days before the end of that month, the Conversion Rate will first be charged on April 15 and the new monthly payment amount will first be due on May 15. The adjustable rate will be charged through April 14 and the Borrower pays all scheduled biweekly payments due through and including April 15. If the Conversion Notice and Fee were received March 20, which is less than 15 days before the end of that month, the Conversion Rate would be charged beginning on May 15 and the first fixed rate monthly payment would be due June 15. The adjustable rate would be charged through May 14 and the Borrower would pay the biweekly payments due through and including May 15.*

The Lender will notify the Borrower of the amount and effective date of the new fixed-rate monthly payments.

SD443D (2004-03-1)          [DD1 (2004-03-1)]          Page 4                    CA
BIWEEKLY

**Exhibit A to Notice of Removal
Page 66**

Branch :WRC,User :3017

Comment:

Station Id :KSI0

0040035685

**F.     Loan Not Assumable and Due-On-Sale After Conversion to a Fixed Rate**

Notwithstanding any provision to the contrary contained in the Note or the Security Instrument, if the Borrower exercises the Conversion Option, the Borrower's loan may not be assumed by any other person. If the Borrower sells or transfers all or part of the Property after exercising the Conversion Option, then the Lender may, at any time, require the Borrower to pay immediately and in full all amounts owing under the Note and the Security Instrument. If the Borrower's loan is otherwise assumable, a person who assumes the loan secured by the Security Instrument prior to the exercise of the Conversion Option also assumes the Conversion Option on the terms and conditions set forth in this Rider and Modification.

**THIS SPACE INTENTIONALLY LEFT BLANK;  SIGNATURE PAGE FOLLOWS.**

SD4435 (2004-03-1)                              Page 8                                          CA

**Exhibit A to Notice of Removal
Page 67**

Branch :WRC,User :3017   Comment:   Station Id :KSIO

0040035685

IN WITNESS WHEREOF, the undersigned has executed this Rider and Modification on the _3rd_ day of _January 2005._

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
JAMES T. WILLIAMS

_____ (Seal)
STEPHANIE WILLIAMS

STATE OF CALIFORNIA  }
COUNTY OF _Los Angeles_ }ss.

On _1-3-05_ before me, _Laurene E. Alvarez, notary public,_ personally appeared _James T. Williams and Stephanie Williams_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

LAURENE E. ALVAREZ
Commission # 1376109
Notary Public - California
Los Angeles County
My Comm. Expires Oct 6, 2007

(This area for official notarial seal)

**Exhibit A to Notice of Removal
Page 68**

3008 (1/01) — (Generic), First American Title Company

Government Code 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of notary: _Laurene E. Alvarez_

Commission No.: _1379103_

Date Commission expires: _Oct 8, 2006_

County: _Los Angeles_

By: _____

Date: _1/11/05_

**Exhibit A to Notice of Removal
Page 69**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit B**

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
31

Branch :WRC,User :3017      Comment:      Station Id :KS10

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 120-452-019-2
Property Address:
1015 NIGHT HAWK CIRCLE
CORONA, CALIFORNIA 92881

DFF20110015006549

**DOC # 2011-0551174**
12/13/2011 03:01 PM Fees: $27.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: QHENSON

Space above this line for Recorder's use only

Trustee Sale No. : 20110015006549      Title Order No.: 110581722

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).**

**This amount is $18,725.12 as of 12/12/2011 and will increase until your account becomes current.** While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor

FCUS_NoticeOfDefault.rpt - Record - (10/17/2011) - Ver.33      Page 1 of 2

**Exhibit A to Notice of Removal
Page 71**

Branch :WRC,User :3017                    Comment:                         Station Id :KSIO

DOC # 2011-0551174
Page 2 of 4  12/13/2011 03:01 PM

IMPORTANT NOTICE
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 20110015006549      Title Order No.: 110581723

permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO BANK, N.A., A/K/A WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A. AND F/K/A WACHOVIA MORTGAGE, FSB**
c/o NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN THAT: NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 01/03/2005, executed by JAMES T. WILLIAMS AND STEPHANIE WILLIAMS, as Trustor, to secure obligations in favor of WORLD SAVINGS BANK, FSB, as Beneficiary Recorded on 01/11/2005 as Instrument No. 2005-0027173 of official records in the Office of the Recorder of RIVERSIDE County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $456,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 5/15/2011 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

FC116_NoticeOfDefault.rpt - Record - (10/11/2011) - Ver-33                    Page 2 of 3

**Exhibit A to Notice of Removal**
**Page 72**

Branch :WRC,User :3017            Comment:                     Station Id :KSI0

DOC # 2011-0551174
Page 3 of 4  12/13/2011 03:01 PM

IMPORTANT NOTICE
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 20110015086549     Title Order No.: 110581722

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 12/12/2011

NDEX WEST, LLC as Agent for Beneficiary

By: _____ Gregory Peck

FCUS  NoticeOfDefault.rpt - Record - (10/17/2011) - Ver-33           Page 3 of 3

RIVERSIDE,CA                     Page 3 of 4              Printed on 10/2/2013 11:20:01 AM
Document: ND 2011.551174

Branch :WRC,User :3017         Comment:         Station Id :KSIO



Wachovia Mortgage
P.O. Box 659558
San Antonio, TX 78265-9558

DOC # 2011-0551174
Page 4 of 4 12/13/2011 03:01 PM

James T Williams **WACHOVIA**

## Declaration of Wells Fargo Bank, N.A.

As required by California Civil Code Section 2923.5, *Lydia Lopez*, an officer of Wells Fargo Bank, N.A., declare as follows:

Regarding James T Williams (hereinafter referred to as "borrower"), Wells Fargo Bank, N.A., has met the requirement of California Civil Code Section 2923.5 as indicated below.

( ) Wells Fargo Bank, N.A., has contacted the borrower as set forth in California Civil Code Section 2923.5(a)(2).

(x ) Wells Fargo Bank, N.A., has tried with due diligence, as prescribed by California Civil Code Section 2923.5(g), to contact the borrower.

The undersigned authorizes the trustee, foreclosure agent and/or their authorized agent to sign, on behalf of the beneficiary/authorized agent, the Notice of Default containing the declaration required pursuant to Civil Code 2923.5.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_11/29/11_
Date

By: _Lydia Lopez_
Title: Vice President Loan Documentation

FP006 012 LLY

Wachovia Mortgage is a division of Wells Fargo Bank, N.A.      L1174B ReDf (10/07)

**Exhibit A to Notice of Removal**
**Page 74**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit C**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

32

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| Attorney: | Office: 949.200.8755 | 4667 MacArthur Blvd., Ste. 150, |
|---|---|---|
| Joseph R. Manning, Jr. | Facsimile: 866.843.8308 | Newport Beach, CA, 92660 |
| Info@ManningLawOffice.com | www.ManningLawOffice.com | |

October 4, 2013

Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.
PO Box 659558
San Antonio, TX 78265
Fax: 866-917-1877/866-359-7363
Fax: 866-278-1179/866-590-8910/866-359-1975

NDEX West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Fax: 972-661-7801/972-661-7800

### Cease and Desist from Continuing Further Foreclosure Activity
### (Change in Circumstances Pursuant to Civil Code §2923.6)

**RE:**  **Stephanie Williams and James Williams**
**Loan Number:** 0040035656
**TS Number:** 20110015005-19

Dear Sir or Madam:

This office has been retained by **Stephanie and James Williams** with regard to real property, **1015 Nighthawk Circle, Corona, CA 92881**, with servicer Wells Fargo Home Mortgage ("Wells Fargo") and with Trustee NDEX West, LLC ("NDEX West"). Attached as **Exhibit A** is the Letter of Authorization, signed by the borrower, in our favor.

Pursuant to the 2013 California Homeowner's Bill of Rights, specifically Civil Code §2923.6(g), the mortgage servicer shall evaluate a borrower's application for a foreclosure prevention alternative if there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application, and that change is documented and submitted to the mortgage servicer. In addition, the mortgage servicer, mortgagee, beneficiary, or authorized agent **shall not record a notice of default or notice of sale, or conduct a trustee's sale,** while the complete foreclosure prevention alternative application is pending.

Please be advised that the borrowers have had a material change of financial circumstances since their previous application for a foreclosure prevention alternative, specifically a loan modification, with Wells Fargo. Mr. and Mrs. Williams' gross disposable household income is approximately $12,000 per month, and the borrowers have also been faced with an increase in their

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| Attorney: | Office: 949.200.8755 | 4667 MacArthur Blvd., Ste. 150, |
|---|---|---|
| Joseph R. Manning, Jr. | Facsimile: 866.843.8308 | Newport Beach, CA, 92660 |
| Info@ManningLawOffice.com | www.ManningLawOffice.com | |

expenses. As a result, Mr. and Mrs. Williams have had a material change in their financial circumstances and would qualify for a modified monthly mortgage payment.

Additionally, as required by Civil Code §2923.6(g), Mr. and Mrs. Williams previously documented and submitted their financial changes to Wells Fargo and made several efforts to contact Wells Fargo to advise it of this material change in their financial circumstances; however, Wells Fargo failed to acknowledge this change in the borrowers' finances and has failed to fairly review the borrowers for any and all available foreclosure prevention alternatives, specifically, a loan modification.

Wells Fargo's failure to fairly evaluate the borrowers for any and all available foreclosure prevention alternatives and Wells Fargo's current failure to review the borrowers in light of her material change in financial circumstances are clear violations of the Homeowner's Bill of Rights, specifically California Civil Code §2923.6(g).

Pursuant to the provisions of Civil Code §2923.6(c), no foreclosure activity may be initiated, and a Notice of Trustee's Sale may not be issued (or re-recorded) and the borrowers shall be evaluated for foreclosure prevention alternatives, including, but not limited to, a loan modification, due to the material change in their financial circumstances.

Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency enforcement. Material violations are also deemed to be a violation of a California charter or lender license and subject to agency administrative enforcement that could jeopardize continued engagement in California lending/servicing business. [Civil Code §§ 2924.12(d), 2924.19(d).]

Please confirm that the borrowers' application and request for any and all foreclosure prevention alternatives will be reviewed, that and all foreclosure activity has been suspended, and advise our office by October 8, 2013 before 5:00 p.m., or this office will seek injunctive relief from the Court, under the California Homeowner's Bill of Rights.

If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:                     Office: 949.200.8755          4667 MacArthur Blvd., Ste. 150,
Joseph R. Manning, Jr.        Facsimile: 866.843.8308        Newport Beach, CA, 92660
Info@ManningLawOffice.com     www.ManningLawOffice.com





**Exhibit A**

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| Attorney: | Office: 940.200.8755 | 4667 MacArthur Blvd., Ste. 150, |
|---|---|---|
| Joseph R. Manning, Jr. | Facsimile: 866.843.8308 | Newport Beach, CA, 92660 |
| Info@ManningLawOffice.com | www.ManningLawOffice.com | |

## LETTER OF AUTHORIZATION

**LENDER/SERVICER:** Wells Fargo    **LOAN NO.:** 0040035685

**BORROWER:** Stephanie Williams    **SOCIAL SECURITY NO.:** 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

**CO-BORROWER:** James Williams    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

**TRUSTEE:** NDex West, LLC    **TS NO.:** 20110015006649

**PROPERTY ADDRESS:** 1015 Nighthawk Cir

**CITY:** Corona    **STATE:** CA    **ZIP CODE:** 92881

**IS YOUR PROPERTY ADDRESS THE SAME AS YOUR MAILING ADDRESS?** Yes ☒ No ☐

**IF NO, PLEASE PROVIDE YOR MAILING ADDRESS:**

**MAILING ADDRESS:** 1015 Nighthawk Cir

**CITY:** Corona    **STATE:** CA    **ZIP CODE:** 92881

To Whom It May Concern:

This letter is to serve as my/our written authorization that I/we, the mortgagor on the above referenced property, do hereby grant The Law Office of Joseph R. Manning Jr. permission to discuss all current and future matters related to my mortgage. Their contact information is listed below. My authorized agents are: Diana Lopez; Alicia Nikkhoo; Lina Nahhas; Katie Tribbey; Marcee Tribbey. This authorization is effective from the date of client(s) signature indicated on the bottom of this form and remains valid for the next 365 consecutive days.

Should you be in possession of previous "Authorization to Release Lending Information" form, please delete them from your records at my/our request.

_Stephanie Williams_      **Date** 7/26/13
Borrower

_James Williams_      7/26/13
Co-Borrower      **Date**

The Law Office of Joseph R. Manning, Jr., APC      **PASSWORD: HELP**
4667 MacArthur Blvd, Suite 150, Newport Beach, CA 92660
Office: (949) 200-8755 Fax: (866) 843-8308

PLEASE DO NOT WRITE BELOW THIS LINE. FOR LENDER USE ONLY

Authorized Lender Signature      Date

06N09A00045Y

R rd 1/1 Version: J1 RVB122242      Initials

Broadcast Report

P 1
10/04/2013 17:40
Serial No. A2X0011002009
TC:    70761

| Addressee | Start Time | Time | Prints | Result | Note |
|-----------|-----------|------|--------|--------|------|
| 18669171877 | 10-04 17:10 | 00:04:22 | 004/004 | OK | |
| 18663597363 | 10-04 17:15 | 00:03:59 | 004/004 | OK | |
| 18662781179 | 10-04 17:19 | 00:04:55 | 004/004 | OK | |
| 18665908910 | 10-04 17:24 | 00:03:59 | 004/004 | OK | |
| 18663591975 | 10-04 17:28 | 00:04:30 | 004/004 | OK | |
| 19726617801 | 10-04 17:33 | 00:02:21 | 004/004 | OK | |
| 19726677800 | 10-04 17:39 | 00:00:57 | 000/004 | No Ans | |

Note    TMR:Timer Tx, POL:Polling, ORG:Original Size, GEN:Gen Tx, FHE:Frame Erase Tx,
        DSB:Page Separate Tx, BRD:Broadcast, CSI:Confidential, MAIL:Manual Tx, SMAIL:Special
        Forward, MIX:MIX-Fax, DBP:Double-Sided Binding Direction, SO:Special Original,
        ECM:ECM code, MIX:MIX-Tx, RLY:Relay, NCF:Nonconfidential, BUL:Bulletin, BIP:BIP Fax;
        IFAX:IP Address Fax, I-FAX:Internet Fax

Result  OK: Communication OK, S-OK: Stop Communication, PC-OFF: Power Switch OFF.
        TEL: Tel mode set, MAIL: Super Error, Cont. Continue, No Ans: No Answer,
        BUSY: Receipt Refused, Busy/ Busy, M-Full:Memory Full, LONG:Page Length Over.
        PG-CON:Receiving page Over, FIL: File Error, DC:DCode Error, MRX:MRX Response Error,
        POW:POW Response Error, PRINT:Compulsory Memory Document Print,
        DEL:Compulsory Memory Document Delete, SEND:Compulsory Memory Document Send.

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8206
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

October 4, 2013

Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.
PO Box 659558
San Antonio, TX 78265
Fax: 866-917-1877/866-359-7363
Fax: 866-278-1179/866-590-8910/866-359-1975

NDEX West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Fax: 972-661-7801/972-661-

Cease and Desist Direct Contact and Further Foreclosure Activity
(Change of Circumstances Pursuant to Civil Code §2923.6)

RE:     Stephanie Williams and James Williams
        Loan Number: 0
        TS Number: 201100

Dear Sir or Madam:

This office has been retained by Stephanie and James Williams with regard to real property,
1015 Nighthawk Circle, Corona, CA 92881, with servicer Wells Fargo Home Mortgage ("Wells
Fargo") and with Trustee NDEX West, LLC ("NDEX West"). Attached as Exhibit A is the Letter of
Authorization, signed by the borrower, in our favor.

Pursuant to the 2013 California Homeowner's Bill of Rights, specifically Civil Code
§2923.6(g), the mortgage servicer shall evaluate a borrower's application for a foreclosure prevention
alternative if there has been a material change in the borrower's financial circumstances since the date
of the borrower's previous application, and that change is documented and submitted to the mortgage
servicer. In addition, the mortgage servicer, mortgagee, beneficiary, or authorized agent shall not
record a notice of default or notice of sale, or conduct a trustee's sale, while the complete
foreclosure prevention alternative application is pending.

Please be advised that the borrowers have had a material change of financial circumstances
since their previous application for a foreclosure prevention alternative, specifically a loan
modification, with Wells Fargo. Mr. and Mrs. Williams' gross disposable household income is
approximately $12,000 per month, and the borrowers have also been faced with an increase in their

# EXHIBIT B

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:** WELLS FARGO BANK, N.A., a
*(AVISO AL DEMANDADO):* business entity form unknown, and
NDEX WEST, LLC, a business entity form unknown, and
DOES 1-100, inclusive,

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

**OCT 11 2013**

I. SIRACUSA

**YOU ARE BEING SUED BY PLAINTIFF:** JAMES T. WILLIAMS AND
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* STEPHANIE WILLIAMS,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California. (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Riverside Superior Court<br>4050 Main Street.<br>4050 Main Street<br>Riverside, CA 92501 | CASE NUMBER<br>*(Número del Caso):*<br>**RIC 1311595** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joseph R. Manning, Jr.                    949-200-8755    866-843-8303
Manning Law Office
4667 MacArthur Blvd
Newport Beach, CA 92660
**DATE:** **OCT 11 2013**              Clerk, by _____ **I. Siracusa** _____, Deputy
*(Fecha)*                            *(Secretario)*                                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* Wells Fargo Bank N.A

   under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [X] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

**Exhibit B to Notice of Removal**
**Page 81**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA  92501
www.riverside.courts.ca.gov

NOTICE OF ASSIGNMENT TO DEPARTMENT FOR CASE MANAGEMENT PURPOSES
AND CASE MANAGEMENT CONFERENCE (CRC 3.722)

WILLIAMS VS WELLS FARGO BANK NA

CASE NO. RIC 1311595

This case is assigned to the Honorable Judge Craig G. Riemer
in Department 05 for case management purposes.
The Case Management Conference is scheduled for 04/09/14
at  8:30 in Department 05.

Case is Assigned to Department 02 for Law and Motion Purposes.

The plaintiff/cross-complainant shall serve a copy of this notice on
all defendants/cross-defendants who are named or added to the
complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6(a)(2) shall be
filed in accordance with that section.

Requests for accommodations can be made by submitting Judicial Council
form MC-410 no fewer than five court days before the hearing.  See
CA Rules of Court, rule 1.100.

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of
California, County of Riverside, and that I am not a party to this
action or proceeding. In my capacity, I am familiar with the practices
and procedures used in connection with the mailing of correspondence.
Such correspondence is deposited in the outgoing mail of the Superior
Court. Outgoing mail is delivered to and mailed by the United States
Postal Service, postage prepaid, the same day in the ordinary course
of business. I certify that I served a copy of the foregoing
notice on this date, by depositing said copy as stated above.

Dated: 10/11/13              Court Executive Officer/Clerk

                    By: _____
                            ILZE SIRACUSA, Deputy Clerk

ac:cmc;

**Exhibit B to Notice of Removal
Page 82**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

| | |
|---|---|
| ☐ BANNING 135 N. Alessandro Rd., Banning, CA 92220 | ☐ MORENO VALLEY 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 |
| ☐ BLYTHE 265 N. Broadway, Blythe, CA 92225 | ☐ MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ HEMET 880 N. State St., Hemet, CA 92543 | ☒ RIVERSIDE 4050 Main St., Riverside, CA 92501 |
| ☐ INDIO 46-200 Oasis St., Indio, CA 92201 | ☐ TEMECULA 41002 County Center Dr., Ste. 100, Temecula, CA 92591 |

RI-030

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number and Address):
Joseph R. Manning, Jr.
Manning Law Office
4667 MacArthur Blvd
Suite 150
Newport Beach, CA 92660
TELEPHONE NO.: 949-200-8755    FAX NO. (Optional): 866-843-8308
E-MAIL ADDRESS (Optional): info@manninglawoffice.com
ATTORNEY FOR (Name): James and Stephanie Williams

FOR COURT USE ONLY

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 11 2013

I. SIRACUSA

PLAINTIFF/PETITIONER: James Williams and Stephanie Williams

DEFENDANT/RESPONDENT: Wells Fargo, et al.

CASE NUMBER:
RIC 1311595

**CERTIFICATE OF COUNSEL**

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☐ The action arose in the zip code of: _____

☒ The action concerns real property located in the zip code of: 92881 _____

☐ The Defendant resides in the zip code of: _____

By Fax

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date October 10, 2013 _____

Joseph R. Manning, Jr. _____
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY MAKING DECLARATION)    ► _____ (SIGNATURE)

COPY

Approved for Mandatory Use
Riverside Superior Court
RI-030 [Rev. 07/01/12]

**CERTIFICATE OF COUNSEL**

Page 1 of 1
Local Rule 1.0015
riverside.courts.ca.gov/localrules/localrules.shtml
RI-030

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Joseph R. Manning, Jr.<br>Manning Law Office<br>4667 MacArthur Blvd<br>Suite 150<br>Newport Beach, CA 92660<br>TELEPHONE NO.: 949-200-8755  FAX NO.: 866-843-8308<br>ATTORNEY FOR *(Name):* James and Stephanie Williams | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: 4050 Main Street
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Historic Courthouse

CASE NAME: Williams, et al. v. Wells Fargo, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RIC 1311595 |
|---|---|---|
| [X] Unlimited  [ ] Limited<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: By Fax<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [X] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties  d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel  e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence  f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Four; Violations of CA Civil 2923.6; Negligence
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: October 10, 2013
Joseph R. Manning, Jr.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

*Legal Solutions ® Plus*

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10



SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
www.riverside.courts.ca.gov
Self-represented parties: http://riverside.courts.ca.gov/selfhelp/self-help.shtml

### ALTERNATIVE DISPUTE RESOLUTION (ADR) – INFORMATION PACKAGE
(California Rules of Court, Rule 3.221; Local Rule, Title 3, Division 2)

### \*\*\* THE PLAINTIFF MUST SERVE THIS INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT. \*\*\*

#### What is ADR?
Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial. The main types are mediation, arbitration and settlement conferences.

#### Advantages of ADR:
- Faster: ADR can be done in a 1-day session within months after filing the complaint.
- Less expensive: Parties can save court costs and attorneys' and witness fees.
- More control: Parties choose their ADR process and provider.
- Less stressful: ADR is done informally in private offices, not public courtrooms.

#### Disadvantages of ADR:
- No public trial: Parties do not get a decision by a judge or jury.
- Costs: Parties may have to pay for both ADR and litigation.

#### Main Types of ADR:

**Mediation:** In mediation, the mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to create a settlement agreement that is acceptable to everyone. If the parties do not wish to settle the case, they go to trial.

#### Mediation may be appropriate when the parties:
- want to work out a solution but need help from a neutral person; or
- have communication problems or strong emotions that interfere with resolution; or
- have a continuing business or personal relationship.

#### Mediation is not appropriate when the parties:
- want their public "day in court" or a judicial determination on points of law or fact;
- lack equal bargaining power or have a history of physical/emotional abuse.

**Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration the arbitrator's decision is final; there is no right to trial. In "non-binding" arbitration, any party can request a trial after the arbitrator's decision. The court's mandatory Judicial Arbitration program is non-binding.

Page 1 of 3

Exhibit B to Notice of Removal
Page 85

<u>Arbitration may be appropriate when the parties:</u>
- want to avoid trial, but still want a neutral person to decide the outcome of the case.

<u>Arbitration is not appropriate when the parties:</u>
- do not want to risk going through both arbitration and trial (Judicial Arbitration)
- do not want to give up their right to trial (binding arbitration)

**Settlement Conferences:**   Settlement conferences are similar to mediation, but the settlement officer usually tries to negotiate an agreement by giving strong opinions about the strengths and weaknesses of the case, its monetary value, and the probable outcome at trial.   Settlement conferences often involve attorneys more than the parties and often take place close to the trial date.

<u>RIVERSIDE COUNTY SUPERIOR COURT ADR REQUIREMENTS</u>
ADR information and forms are posted on the ADR website: http://riverside.courts.ca.gov/adr/adr.shtml

**General Policy:**
Parties in most general civil cases are expected to participate in an ADR process before requesting a trial date and to participate in a settlement conference before trial.  (Local Rule 3200)

**Court-Ordered ADR:**
Certain cases valued at under $50,000 may be ordered to judicial arbitration or mediation. This order is usually made at the Case Management Conference. See the "Court-Ordered Mediation Information Sheet" on the ADR website for more information.

**Private ADR (for cases not ordered to arbitration or mediation):**
Parties schedule and pay for their ADR process without Court involvement.  Parties may schedule private ADR at any time; there is no need to wait until the Case Management Conference. See the "Private Mediation Information Sheet" on the ADR website for more information.

**BEFORE THE CASE MANAGEMENT CONFERENCE (CMC), ALL PARTIES MUST:**
1. Discuss ADR with all parties at least 30 days before the CMC.  Discuss:
   - Your preferences for mediation or arbitration.
   - Your schedule for discovery (getting the information you need) to make good decisions about settling the case at mediation or presenting your case at an arbitration.
2. File the attached "Stipulation for ADR" along with the Case Management Statement, if all parties can agree.
3. Be prepared to tell the judge your preference for mediation or arbitration and the date when you could complete it.
                    (Local Rule 3218)

**RIVERSIDE COUNTY ADR PROVIDERS INCLUDE:**
- The Court's Civil Mediation Panel (available for both Court-Ordered Mediation and Private Mediation).  See http://adr.riverside.courts.ca.gov/adr/civil/panellist.php or ask for the list in the civil clerk's office, attorney window.
- Riverside County ADR providers funded by DRPA (Dispute Resolution Program Act): Dispute Resolution Service (DRS) Riverside County Bar Association:  (951) 682-1015 Dispute Resolution Center, Community Action Partnership (CAP):  (951) 955-4900

Adopted for Mandatory Use
Riverside Superior Court
RI-ADR1A [Rev. 1/1/12]

**Exhibit B to Notice of Removal
Page 86**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

☐ Banning - 135 N. Alessandro Road, Banning, CA 92220
☐ Hemet - 880 N. State Street, Hemet, CA 92543
☐ Indio - 46-200 Oasis Street, Indio, CA 92201
☐ Riverside - 4050 Main Street, Riverside, CA 92501
☐ Temecula - 41002 County Center Drive, Bldg. C - Suite 100, Temecula, CA 92591

| PLAINTIFF(S):<br><br>DEFENDANT(S): | CASE NUMBER: |
|---|---|
| **STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)**<br>(CRC 3.2221; Local Rule, Title 3, Division 2) | CASE MANAGEMENT CONFERENCE DATE(S): |

**Court-Ordered ADR:**
Eligibility for Court-Ordered Mediation or Judicial Arbitration will be determined at the Case Management Conference.  If eligible, the parties agree to participate in:

☐ Mediation          ☐ Judicial Arbitration (non-binding)

**Private ADR:**
If the case is not eligible for Court-Ordered Mediation or Judicial Arbitration, the parties agree to participate in the following ADR process, which they will arrange and pay for without court involvement:

☐ Mediation          ☐ Judicial Arbitration (non-binding)
☐ Binding Arbitration      ☐ Other (describe):_____

Proposed date to complete ADR: _____

**SUBMIT THIS FORM ALONG WITH THE CASE MANAGEMENT STATEMENT.**

---

PRINT NAME OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
☐ Plaintiff ☐ Defendant

PRINT NAME OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
☐ Plaintiff ☐ Defendant

PRINT NAME OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
☐ Plaintiff ☐ Defendant

PRINT NAME OF PARTY OR ATTORNEY          SIGNATURE OF PARTY OR ATTORNEY          DATE
☐ Plaintiff ☐ Defendant

☐ Additional signature(s) attached

Page 3 of 3

Adopted for Mandatory Use
Riverside Superior Court
RI-ADR1B [Rev. 1/1/12]

**ALTERNATIVE DISPUTE RESOLUTION (ADR)**
**STIPULATION**

**Exhibit B to Notice of Removal**
**Page 87**

1   EDWARD A. TREDER
      State Bar No. 116307
2   TRACEY MERRELL
      State Bar No. 266704
3   BARRETT DAFFIN FRAPPIER
      TREDER & WEISS, LLP
4   20955 Pathfinder Road, Suite 300
   Diamond Bar, California 91765
5   (626) 915-5714 – Phone
      (626) 915-0289 – Fax
6   EdwardT@BDFGroup.com
   TraceyM@BDFGroup.com
7   File No. 20110015006549



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 3 0 2013

K. Garcia

8   Attorneys for Defendant NDeX WEST, LLC

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                FOR THE COUNTY OF RIVERSIDE

11   JAMES T. WILLIAMS and STEPHANIE          | CASE NO. RIC 1311595
12   WILLIAMS, individuals,
                                              UNLIMITED CIVIL
13                              Plaintiffs,
                                              ASSIGNED FOR LAW AND MOTION
14      vs.                                   PURPOSES TO:
15                                            HON. MATTHEW C. PERANTONI,
   WELLS FARGO BANK, N.A.; NDEX              DEPT. 02
16   WEST, LLC; and DOES 1 through 100,
   inclusive,                                DECLARATION OF NON-MONETARY
17                                           STATUS
18                              Defendants.
                                             (Civ. Code § 2924l)
19

20

21      I, TRACEY MERRELL, declare as follows:

22      1.      I am an attorney at law admitted to practice before all courts in the State of

23   California. I am an associate attorney at Barrett Daffin Frappier Treder & Weiss, LLP,

24   attorneys for Defendant NDeX West, LLC.

25      2.      By document recorded on January 25, 2012, as Instrument No. 2012-0034630 in

26   the Office of the Riverside County Recorder, Defendant NDeX West, LLC was appointed as

27   substitute trustee under that certain Deed of Trust executed by James T. Williams and

28

**Exhibit B to Notice of Removal
Page 88**

1    Stephanie Williams, Husband and Wife, to secure a debt in the original sum of $456,000.00

2    in favor of World Savings Bank, FSB, and recorded on January 11, 2005, as Instrument No.

3    2005-0027173 in the Office of the Riverside County Recorder. Said Deed of Trust created a

4    first priority security interest with power of sale against the real property described therein

5    and commonly known as 1015 Night Hawk Circle, Corona, California 92881-8689.

6         3.     I have reviewed the claims alleged in Plaintiffs Complaint and the relief

7    requested as to Defendant NDeX West, LLC. Based thereon, Defendant NDeX West, LLC

8    knows or maintains a reasonable belief that it has been named as a defendant solely in its

9    capacity as a substitute trustee under said Deed of Trust and that Plaintiffs do not assert any

10   claims for monetary relief against Defendant NDeX West, LLC.

11        4.     Defendant NDeX West, LLC reasonably believes that it has not been named as

12   a defendant due to any acts or omissions on its part in the performance of its duties as

13   substitute trustee because the facts alleged relate primarily to a loan origination and/or loan

14   servicing dispute between Plaintiffs, the original mortgage lender, its successor(s)-in-

15   interest and/or the loan servicing agent(s) for such mortgage lender(s).Except for its

16   handling of the non-judicial foreclosure, Defendant NDeX West, LLC was not involved in

17   the origination or servicing of the subject mortgage loan.

18        5.     Defendant NDeX West, LLC agrees to be bound by any non-monetary order

19   or judgment that may be issued by the court regarding said Deed of Trust.

20        6.     I have personal knowledge of the foregoing facts, and if called as a witness, I

21   would testify competently thereto.

22        I declare under penalty of perjury under the laws of the State of California that the

23   foregoing facts are true and correct.

24        Executed this 25th day of October, 2013, at Diamond Bar, California.

25

26                                          _____
                                            TRACEY MERRELL

27

28

## CERTIFICATE OF SERVICE BY MAIL
### (Code Civ. Proc. §§ 1013a, 2015.5)

STATE OF CALIFORNIA          )

COUNTY OF LOS ANGELES        )

I, Anthony F. Jordan, declare as follows:

I am employed in Los Angeles County, I am over the age of eighteen years and am not a party to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar, California 91765.

On October 29, 2013, I served the **DECLARATION OF NON-MONETARY STATUS** on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

**Attorneys for Plaintiffs**
Joseph R. Manning, Jr., Esq. (SBN 223381)
THE LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660
T: (949) 200-8755
F: (866) 843-8308

I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing affidavit/declaration.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct.

Executed on October 29, 2013, at Diamond Bar, California.

ANTHONY F. JORDAN

**Exhibit B to Notice of Removal
Page 90**

20110015006549

1   EDWARD A. TREDER
    State Bar No. 116307
2   TRACEY MERRELL
    State Bar No. 266704
3   BARRETT DAFFIN FRAPPIER
    TREDER & WEISS, LLP
4   20955 Pathfinder Road, Suite 300
    Diamond Bar, California 91765
5   (626) 915-5714 – Phone
    (626) 915-0289 – Fax
6   EdwardT@BDFGroup.com
    TraceyM@BDFGroup.com
7   File No. 20110015006549



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 30 2013
K. Garcia

8   Attorneys for Defendant NDeX WEST, LLC

9         SUPERIOR COURT OF THE STATE OF CALIFORNIA

10            FOR THE COUNTY OF RIVERSIDE

11  JAMES T. WILLIAMS and STEPHANIE       CASE NO. RIC 1311595
12  WILLIAMS, individuals,
                                          UNLIMITED CIVIL
13                          Plaintiffs,
14        vs.                             ASSIGNED FOR LAW AND MOTION
                                          PURPOSES TO:
15                                        HON. MATTHEW C. PERANTONI,
    WELLS FARGO BANK, N.A.; NDEX          DEPT. 02
16  WEST, LLC; and DOES 1 through 100,
17  inclusive,
                                          NOTICE OF FILING OF DECLARATION
18                          Defendants.   OF NON-MONETARY STATUS
19
20                                        (Civ. Code § 2924l)

21        TO: ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

22        YOU ARE HEREBY NOTIFIED that Defendant NDeX West, LLC has filed a

23  Declaration of Non-Monetary Status in this action as authorized by Civ. Code § 2924l(a). A

24  true and correct copy of the Declaration of Non-Monetary Status is attached hereto as

25  Exhibit "1" and incorporated herein by this reference.

26        YOU ARE FURTHER NOTIFIED that, in accordance with Civ. Code § 2924l(c), any

27  parties who have appeared in this action shall have fifteen (15) days from the service of the

28

NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS
-1-

**Exhibit B to Notice of Removal
Page 91**

1   Declaration of Non-Monetary Status in which to file and serve written objections to the non-

2   monetary status of said defendant. Any written objections shall set forth the factual basis on

3   which the objections are based and shall be served upon the undersigned counsel for said

4   defendant. During the time for filing written objections, the time within which Defendant

5   NDeX West, LLC is required to file a responsive pleading to Plaintiffs' Complaint shall be

6   tolled in accordance with the provisions of Civ. Code § 2924l(f).

7        YOU ARE FURTHER NOTIFIED that, in accordance with Civ. Code § 2924l(d), if no

8   timely written objections are filed and served, then Defendant NDeX West, LLC shall not be

9   subject to any monetary awards for damages, attorneys' fees or costs, shall be required to

10   respond to any discovery requests as a nonparty and shall be bound by any non-monetary

11   orders or judgment concerning the deed of trust that is the subject of the action.

12

13                         BARRETT DAFFIN FRAPPIER

14                         TREDER & WEISS, LLP

15

16   Dated: October 25, 2013         By: _____

17                         TRACEY MERRELL, Attorneys for

                          Defendant NDeX West, LLC

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1   EDWARD A. TREDER
    State Bar No. 116307
2   TRACEY MERRELL
    State Bar No. 266704
3   BARRETT DAFFIN FRAPPIER
    TREDER & WEISS, LLP
4   20955 Pathfinder Road, Suite 300
    Diamond Bar, California 91765
5   (626) 915-5714 – Phone
    (626) 915-0289 – Fax
6   EdwardT@BDFGroup.com
    TraceyM@BDFGroup.com
7   File No. 20110015006549

8   Attorneys for Defendant NDeX WEST, LLC

9         SUPERIOR COURT OF THE STATE OF CALIFORNIA

10            FOR THE COUNTY OF RIVERSIDE

11

12   JAMES T. WILLIAMS and STEPHANIE       CASE NO. RIC 1311595
     WILLIAMS, individuals,
13                                          UNLIMITED CIVIL
                        Plaintiffs,
14                                          ASSIGNED FOR LAW AND MOTION
          vs.                               PURPOSES TO:
15                                          HON. MATTHEW C. PERANTONI,
     WELLS FARGO BANK, N.A.; NDEX          DEPT. 02
16   WEST, LLC; and DOES 1 through 100,
     inclusive,                            DECLARATION OF NON-MONETARY
17                                          STATUS
                        Defendants.
18                                          (Civ. Code § 2924l)
19

20

21        I, TRACEY MERRELL, declare as follows:

22        1.      I am an attorney at law admitted to practice before all courts in the State of

23   California. I am an associate attorney at Barrett Daffin Frappier Treder & Weiss, LLP,

24   attorneys for Defendant NDeX West, LLC.

25        2.      By document recorded on January 25, 2012, as Instrument No. 2012-0034630 in

26   the Office of the Riverside County Recorder, Defendant NDeX West, LLC was appointed as

27   substitute trustee under that certain Deed of Trust executed by James T. Williams and

28

                                                    **Exhibit B to Notice of Removal**
                                                    **Page 94**

1  Stephanie Williams, Husband and Wife, to secure a debt in the original sum of $456,000.00

2  in favor of World Savings Bank, FSB, and recorded on January 11, 2005, as Instrument No.

3  2005-0027173 in the Office of the Riverside County Recorder. Said Deed of Trust created a

4  first priority security interest with power of sale against the real property described therein

5  and commonly known as 1015 Night Hawk Circle, Corona, California 92881-8689.

6      3.      I have reviewed the claims alleged in Plaintiffs Complaint and the relief

7  requested as to Defendant NDeX West, LLC. Based thereon, Defendant NDeX West, LLC

8  knows or maintains a reasonable belief that it has been named as a defendant solely in its

9  capacity as a substitute trustee under said Deed of Trust and that Plaintiffs do not assert any

10  claims for monetary relief against Defendant NDeX West, LLC.

11      4.      Defendant NDeX West, LLC reasonably believes that it has not been named as

12  a defendant due to any acts or omissions on its part in the performance of its duties as

13  substitute trustee because the facts alleged relate primarily to a loan origination and/or loan

14  servicing dispute between Plaintiffs, the original mortgage lender, its successor(s)-in-

15  interest and/or the loan servicing agent(s) for such mortgage lender(s).Except for its

16  handling of the non-judicial foreclosure, Defendant NDeX West, LLC was not involved in

17  the origination or servicing of the subject mortgage loan.

18      5.      Defendant NDeX West, LLC agrees to be bound by any non-monetary order

19  or judgment that may be issued by the court regarding said Deed of Trust.

20      6.      I have personal knowledge of the foregoing facts, and if called as a witness, I

21  would testify competently thereto.

22      I declare under penalty of perjury under the laws of the State of California that the

23  foregoing facts are true and correct.

24      Executed this 25th day of October, 2013, at Diamond Bar, California.

25

26                                          TRACEY MERRELL

27

28

<u>**CERTIFICATE OF SERVICE BY MAIL**</u>
(Code Civ. Proc. §§ 1013a, 2015.5)

STATE OF CALIFORNIA      )

COUNTY OF LOS ANGELES  )

I, Anthony F. Jordan, declare as follows:

I am employed in Los Angeles County, I am over the age of eighteen years and am not a party to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar, California 91765.

On October 29, 2013, I served the **DECLARATION OF NON-MONETARY STATUS** on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

<u>**Attorneys for Plaintiffs**</u>
Joseph R. Manning, Jr., Esq. (SBN 223381)
THE LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660
T: (949) 200-8755
F: (866) 843-8308

I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing affidavit/declaration.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct.

Executed on October 29, 2013, at Diamond Bar, California.

ANTHONY F. JORDAN

DECLARATION OF NON-MONETARY STATUS
-3-

**Exhibit B to Notice of Removal
Page 96**

**CERTIFICATE OF SERVICE BY MAIL**
(Code Civ. Proc. §§ 1013a, 2015.5)

STATE OF CALIFORNIA       )
                                 )
COUNTY OF LOS ANGELES   )

I, Anthony F. Jordan, declare as follows:

I am employed in Los Angeles County, I am over the age of eighteen years and am not a party to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar, California 91765.

On October 29, 2013, I served the **NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS** on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

**Attorneys for Plaintiffs**
Joseph R. Manning, Jr., Esq. (SBN 223381)
THE LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION
4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660
T: (949) 200-8755
F: (866) 843-8308

I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing affidavit/declaration.

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct.

Executed on October 29, 2013, at Diamond Bar, California.

_Anthony F. Jordan_
ANTHONY F. JORDAN

NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS

-3-

**Exhibit B to Notice of Removal
Page 97**

# EXHIBIT C

B1 (Official Form 1)(12/11)

| United States Bankruptcy Court<br>Central District of California | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>Williams, James Tyrone | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>Williams, Stephanie Phylise |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>xxx-xx-4090 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>xxx-xx-9531 |
| Street Address of Debtor (No. and Street, City, and State):<br>1015 Nighthawk Circle<br>Corona, CA                    ZIP Code 92881 | Street Address of Joint Debtor (No. and Street, City, and State):<br>1015 Nighthawk Circle<br>Corona, CA                    ZIP Code 92881 |
| County of Residence or of the Principal Place of Business:<br>Riverside | County of Residence or of the Principal Place of Business:<br>Riverside |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| Type of Debtor<br>(Form of Organization) (Check one box)<br>■ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | Nature of Business<br>(Check one box)<br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined<br>in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box)<br>■ Chapter 7              ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 9                  of a Foreign Main Proceeding<br>☐ Chapter 11<br>☐ Chapter 12            ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 13                of a Foreign Nonmain Proceeding |
|---|---|---|

| Chapter 15 Debtors<br>Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding<br>by, regarding, or against debtor is pending: | Tax-Exempt Entity<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br>■ Debts are primarily consumer debts,      ☐ Debts are primarily<br>defined in 11 U.S.C. § 101(8) as              business debts.<br>"incurred by an individual primarily for<br>a personal, family, or household purpose." |
|---|---|---|

| Filing Fee (Check one box)<br>■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the<br>debtor is unable to pay fee except in installments. Rule 1006(b). See Official<br>Form 3A.<br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:                 Chapter 11 Debtors<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates)<br>are less than $2,343,300 (*amount subject to adjustment on 4/01/13 and every three years thereafter*).<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors,<br>in accordance with 11 U.S.C. § 1126(b). |
|---|---|

| Statistical/Administrative Information<br>☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,<br>there will be no funds available for distribution to unsecured creditors. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Exhibit C to Notice of Removal
Page 98

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | Williams, James Tyrone<br>Williams, Stephanie Phylise |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  - None - | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>- None - | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>**X** /s/ Thomas L. Hipke                    April 2, 2012<br>Signature of Attorney for Debtor(s)          (Date)<br>Thomas L. Hipke |

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br><br>☐ Yes, and Exhibit C is attached and made a part of this petition.<br>■ No. |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)<br><br>■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.<br><br>If this is a joint petition:<br>■ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition. |

| **Information Regarding the Debtor - Venue** |
|---|
| (Check any applicable box)<br><br>■  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.<br><br>☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property** |
|---|
| (Check all applicable boxes)<br><br>☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)<br><br>_____<br>(Name of landlord that obtained judgment)<br><br>_____<br>(Address of landlord)<br><br>☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and<br><br>☐  Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.<br><br>☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)). |

**Exhibit C to Notice of Removal**
**Page 99**

# United States Bankruptcy Court
## Central District Of California

**3420 Twelfth Street, Riverside, CA 92501–3819**

# ORDER AND NOTICE OF DISMISSAL
## ARISING FROM CHAPTER 13 CONFIRMATION HEARING

**DEBTOR INFORMATION:**
James Tyrone Williams

**BANKRUPTCY NO.**  6:12–bk–18264–DS

**CHAPTER**  13

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):**   xxx–xx–4090
**Employer Tax–Identification (EIN) No(s).(if any):**   N/A
**Debtor Dismissal Date:** 8/24/12

**JOINT DEBTOR INFORMATION:**
Stephanie Phylise Williams

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):** xxx–xx–9531
**Employer Tax–Identification (EIN) No(s).(if any):**  N/A
**Joint Debtor Dismissal Date:**  8/24/12
**Address:**
1015 Nighthawk Circle
Corona, CA 92881

Pursuant to the court's findings and conclusions made at the confirmation hearing in this case,
IT IS ORDERED THAT:

(1)   debtor's bankruptcy case is dismissed; and

(2)   the court retains jurisdiction on all issues arising under Bankruptcy Code Sections 110, 329 and 362.

Dated: August 24, 2012

BY THE COURT,

**Kathleen J. Campbell**
Clerk of Court

(Form od13a VAN–150) Rev. 03/09

**48 / LD**

**Exhibit C to Notice of Removal
Page 100**

B1 (Official Form 1)(12/11)

| United States Bankruptcy Court<br>Central District of California | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>Williams, James Tyrone | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>Williams, Stephanie Phylise |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>xxx-xx-4090 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>xxx-xx-9531 |
| Street Address of Debtor (No. and Street, City, and State):<br>1015 Nighthawk Circle<br>Corona, CA                    ZIP Code 92881 | Street Address of Joint Debtor (No. and Street, City, and State):<br>1015 Nighthawk Circle<br>Corona, CA                    ZIP Code 92881 |
| County of Residence or of the Principal Place of Business:<br>Riverside | County of Residence or of the Principal Place of Business:<br>Riverside |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |

Location of Principal Assets of Business Debtor
(if different from street address above):

| Type of Debtor<br>(Form of Organization) (Check one box)<br><br>■ Individual (includes Joint Debtors)<br>See Exhibit D on page 2 of this form.<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | Nature of Business<br>(Check one box)<br><br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined<br>in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box)<br><br>☐ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>■ Chapter 13 |  ☐ Chapter 15 Petition for Recognition<br>of a Foreign Main Proceeding<br><br>☐ Chapter 15 Petition for Recognition<br>of a Foreign Nonmain Proceeding |
|---|---|---|---|

| Chapter 15 Debtors<br><br>Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding<br>by, regarding, or against debtor is pending: | Tax-Exempt Entity<br>(Check box, if applicable)<br><br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br><br>■ Debts are primarily consumer debts,      ☐ Debts are primarily<br>defined in 11 U.S.C. § 101(8) as           business debts.<br>"incurred by an individual primarily for<br>a personal, family, or household purpose." |
|---|---|---|

| Filing Fee (Check one box)<br><br>■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the<br>debtor is unable to pay fee except in installments. Rule 1006(b). See Official<br>Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates)<br>are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors,<br>in accordance with 11 U.S.C. § 1126(b). |
|---|---|

Statistical/Administrative Information
■ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,
there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Exhibit C to Notice of Removal
Page 101

B1 (Official Form 1)(12/11) | Page 2

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | Williams, James Tyrone<br>Williams, Stephanie Phylise |

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location<br>Where Filed:  Central District of California, Riverside | Case Number:<br>12-18264 | Date Filed:<br>4/02/12 |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor:<br>- None - | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐  Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>**X** /s/ Todd A. Warshof _____ August 31, 2012 ___<br>Signature of Attorney for Debtor(s)  (Date)<br>Todd A. Warshof 232227 |

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.

■  No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

■  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue

(Check any applicable box)

■  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property

(Check all applicable boxes)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

**Exhibit C to Notice of Removal**<br>**Page 102**

# United States Bankruptcy Court
# Central District Of California

**3420 Twelfth Street, Riverside, CA 92501–3819**

## <u>NOTICE OF DISMISSAL</u>

**DEBTOR INFORMATION:**
James Tyrone Williams

**BANKRUPTCY NO.** 6:12–bk–30353–DS

**CHAPTER** 13

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):** xxx–xx–4090
**Employer Tax–Identification (EIN) No(s).(if any):** N/A
**Debtor Dismissal Date:** 7/11/13

**JOINT DEBTOR INFORMATION:**
Stephanie Phylise Williams

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):** xxx–xx–9531
**Employer Tax–Identification (EIN) No(s).(if any):** N/A
**Joint Debtor Dismissal Date:** 7/11/13
**Address:**
1015 Nighthawk Circle
Corona, CA 92881

You are notified that an order was entered **DISMISSING** the above–captioned case and vacating the discharge if previously
entered.

For The Court,

Dated: July 11, 2013

**Kathleen J. Campbell**
Clerk of Court

(Form ntcdsm Rev. 03/09) VAN–24

**66 / TMG**

**Exhibit C to Notice of Removal
Page 103**

# EXHIBIT D



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFIED ARTICLES OF ASSOCIATION

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in the Office of the Comptroller of the Currency, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota (Charter No. 1).



IN TESTIMONY WHEREOF, today, March 27, 2012, I have hereunto subscribed my name and caused my seal of office to be affixed to these presents at the U.S. Department of the Treasury, in the City of Washington, District of Columbia.

*John Walsh*

_____

Acting Comptroller of the Currency

**Exhibit D to Notice of Removal
Page 104**

# ARTICLES OF ASSOCIATION
## OF
## WELLS FARGO BANK, NATIONAL ASSOCIATION

## ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association. The Association may also use the abbreviation Wells Fargo Bank, N.A.

## ARTICLE II - OFFICES

1. <u>Main Office</u>. The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota. The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2. <u>Branch Offices</u>. The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3. <u>Conduct of Business</u>. The general business of the Association shall be conducted at its main office and its branches.

## ARTICLE III - BOARD OF DIRECTORS

1. <u>Number</u>. The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2. <u>Qualification</u>. Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3. <u>Vacancy</u>. The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.

4. <u>Appointment of Officers</u>. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. <u>Powers</u>. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

## ARTICLE IV - MEETINGS OF SHAREHOLDERS

1. <u>Annual Meeting</u>. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. <u>Special Meetings</u>. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

3. <u>Notice of Meetings</u>. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 <u>Written Consents</u>. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

## ARTICLE V - CAPITAL

1. <u>Capitalization</u>. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

- 2 -

2. <u>Voting Rights</u>. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. <u>Debt Obligations</u>. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) <u>Elimination of Certain Liability of Directors</u>. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) <u>Right to Indemnification</u>. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall

- 3 -

continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association.  The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise.  The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2)  Non-Exclusivity of Rights.  The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3)  Insurance.  The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

S:\RUEDP01\ARTICLES\WFB Articles (CURRENT).doc



# FDIC
**Federal Deposit Insurance Corporation**
Each depositor insured to at least $250,000 per insured bank



Advanced Search

Home > Industry Analysis > Bank Data & Statistics > Institution Directory > Bank Find

**FDIC**

## Bank Find

Institution Directory Home

---

**Back to Search Bank Find**

**History of World Savings Bank, Fsb, Sioux Falls, New Jersey (FDIC Cert: 27076)**
**Note: This institution is currently part of Wells Fargo Bank, National Association, Sioux Falls, South Dakota (FDIC Cert: 3511)**

|  | Date | Event |
|---|---|---|
| 1 | 10/8/1987 | Institution established. Original name: Watchung Hills Bank For Savings (27076) |
| 2 | 1/21/1995 | Changed name to **World Savings Bank, F.S.B. (27076).** |
| 3 | 1/21/1995 | Changed primary regulatory agency from Federal Deposit Insurance Corporation to Office Of Thrift Supervision. |
| 4 | 7/24/1996 | Moved bank headquarters from Warren, New Jersey to El Cajon, California. |
| 5 | 8/30/1996 | Moved bank headquarters from El Cajon, California to Oakland, California. |
| 6 | 12/31/2000 | Acquired World Savings And Loan Association, A Federal Savings And Loan Associati (31315) in Oakland, California. |
| 7 | 4/16/2001 | Changed name to **World Savings Bank, Fsb (27076).** |
| 8 | 12/31/2007 | Changed name to **Wachovia Mortgage, Fsb (27076).** |
| 9 | 12/31/2007 | Moved bank headquarters from Oakland, California to North Las Vegas, Nevada. |
| 10 | 11/1/2009 | Changed name to **Wells Fargo Bank Southwest, National Association (27076).** |
| 11 | 11/1/2009 | Changed primary regulatory agency from Office Of Thrift Supervision to Comptroller Of The Currency. |
| 12 | 11/1/2009 | Changed organization type to Commercial Bank. |
| 13 | 11/1/2009 | Changed institution class to Insured Commercial Bank, National, Member Frs. |
| 14 | 11/1/2009 | **Merged into and subsequently operated as part of Wells Fargo Bank, National Association in Sioux Falls, South Dakota (3511)** |
| 15 | 11/7/2009 | Acquired Wachovia Bank Of Colorado, Interim National Association (59019) in Denver, Colorado. |
| 16 | 3/20/2010 | Acquired Wachovia Bank, National Association (33869) in Charlotte, North Carolina. |
| 17 | 3/20/2010 | Acquired Wachovia Bank Of Delaware, National Association (33931) in Wilmington, Delaware. |
| 18 | 4/10/2010 | Acquired Wachovia Card Services, National Association (58496) in Atlanta, Georgia. |
| 19 | 5/10/2010 | Acquired Wells Fargo Hsbc Trade Bank, National Association (34075) in San Francisco, California. |
| 20 | 11/1/2010 | Acquired Wells Fargo Alaska Trust Company, National Association (57755) in Anchorage, Alaska. |
| 21 | 3/31/2011 | Acquired Wells Fargo Central Bank (26839) in Calabasas, California. |

Back

**Exhibit D to Notice of Removal**
**Page 109**

# EXHIBIT E

1
2
3
4
5
6
7
8

EDWARD A. TREDER
  State Bar No. 116307
MASUMI J. PATEL
  State Bar No. 233921
BARRETT DAFFIN FRAPPIER
  TREDER & WEISS, LLP
20955 Pathfinder Road , Suite 300
Diamond Bar, CA  91765
  (626) 915-5714 – Phone
  (626) 915-0289 – FAX
edwardt@BDFGroup.com

9
10

Attorneys for Defendant NDeX WEST, LLC

11

**UNITED STATES DISTRICT COURT**

12

**CENTRAL DISTRICT OF CALIFORNIA**

13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| JOSE ALBARRAN and ZILENA ABARRAN, individually and on behalf of the General Public,<br><br>              Plaintiffs,<br><br>  vs.<br><br>WELLS FARGO BANK, N.A.; NDEX WEST LLC; and DOES 1 to 100, inclusive,<br><br>             Defendants. | ) Case No.: 11-cv-00548-JVS-MLG<br>)<br>) **DECLARATION OF RENEE**<br>) **JACKSON RE: CITIZENSHIP OF**<br>) **DEFENDANT NDeX WEST, LLC**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

24
25

I, RENEE JACKSON, declare as follows:

26
27
28

     1.    I am General Counsel for The Dolan Company, a publicly traded Delaware corporation (DM: NYSE) headquartered in Minneapolis, MN. In that capacity, I am familiar with the corporate structure and principal place of business

-1-

**DECLARATION RE: CITIZENSHIP OF NDeX WEST, LLC**

of The Dolan Company subsidiaries and affiliates, including Defendant NDeX WEST, LLC.

2.     NDEX WEST, LLC ("NDeX WEST") is a single-member limited liability company organized in Delaware and headquartered in Texas. National Default Exchange Holdings, LP ("NDeX Holdings"), is the manager and sole member of NDeX WEST, and is a Delaware limited partnership headquartered in Texas. The General Partner of NDeX Holdings, LP is National Default Exchange Management, Inc. ("NDeX Management"), a Delaware corporation headquartered in Texas.

3.     American Processing Company, LLC ("APC"), a limited liability company organized and headquartered in Michigan, owns 86% of both NDeX Holdings and NDeX Management.  The remaining 14% of the limited partner interest of NDex Holdings are owned by THP/NDEX AIV, L.P. a Delaware limited partnership, headquartered in Minnesota ("THP LP").  100% of the general partnership interests of THP LP are owned by APC.  100% of the limited partnership interests of THP LP are owned by THP/NDex AIV Corp. ("THP Corp"), a corporation organized under the laws of Delaware and headquartered in Minnesota.  THP Corp is wholly owned by APC.  APC is owned 94% by Dolan APC LLC ("Dolan APC"), a Delaware limited liability company headquartered in Minnesota and 6% is owned by individuals, all of whom are residents of the State of Texas.  Dolan APC is wholly owned by The Dolan Company, a Delaware corporation, headquartered in Minnesota.

4.     As explained above, no owner or member of NDeX WEST is a citizen of California.

5.     I have knowledge of the foregoing facts, and if called as a witness, I would testify competently thereto.      -2-

**DECLARATION RE: CITIZENSHIP OF NDeX WEST, LLC**

1   I declare under the penalty of perjury under the laws of the United States and the

2   State of California that the foregoing facts are true and correct.

3

4       Executed this 11th day of May, 2011 at Minneapolis, MN.

5

6

7           RENEE JACKSON, Declarant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

**DECLARATION RE: CITIZENSHIP OF NDeX WEST, LLC**

# EXHIBIT F

ORT - 703283637

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0040035685

NOTE AMOUNT: $456,000.00

120-452-019-2

**DOC # 2005-0027173**
01/11/2005 08:00A Fee:78.00
Page 1 of 24
Recorded in Official Records
County of Riverside
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC |
|---|---|---|------|------|-----|------|-------|-----|------|
|   |   |   | 24   |      |     |      |       |     |      |
| A | R | L |      |      |     | COPY | LONG  | REFUND | NCHG | EXAM |

T SG 78

### DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR BIWEEKLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $570,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.   **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
     **(A) Security Instrument.** This Deed of Trust, which is dated **January 3, 2005,** will be called the "Security Instrument."

     **(B) Borrower.** JAMES T. WILLIAMS AND STEPHANIE WILLIAMS, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

     **(C) Lender.** WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is A FEDERAL SAVINGS BANK which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .



003

LENDER'S USE ONLY

SD001A (2004-03-1)                    DEED OF TRUST-ADJUSTABLE                    CA
                                              Page 1

**Exhibit F to Notice of Removal**
**Page 113**

0040035685

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$456,000.00** ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in full by **January 24, 2035.**

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)   The property which is located at **1015 NIGHT HAWK CIRCLE, CORONA, CA  92881-8689**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

**Exhibit F to Notice of Removal
Page 114**

0040035685

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.    PAYMENTS FOR TAXES AND INSURANCE**
   **(A)    Borrower's Obligations**
       I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

**Exhibit F to Notice of Removal
Page 115**

0040035685

**(B)**   **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**Exhibit F to Notice of Removal**
**Page 116**

0040035685

**3.   APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

**Exhibit F to Notice of Removal
Page 117**

0040035685

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

Exhibit F to Notice of Removal
Page 118

0040035685

**7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.   LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the Property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**Exhibit F to Notice of Removal
Page 119**

0040035685

**10.     CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)     Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)     Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.     OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.     MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**Exhibit F to Notice of Removal**
**Page 120**

0040035685

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1015 NIGHT HAWK CIRCLE, CORONA, CA  92881-8689**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.   GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

**Exhibit F to Notice of Removal
Page 121**

0040035685

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An **assignment** is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**Exhibit F to Notice of Removal Page 122**

0040035685

**(B)**      The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**      If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**      I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**Exhibit F to Notice of Removal
Page 123**

0040035685

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.   SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

Exhibit F to Notice of Removal
Page 124

0040035685

**28.  RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.  RECONVEYANCE**

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.  STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

**Exhibit F to Notice of Removal**
**Page 125**

0040035685

**31.    (   )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

Exhibit F to Notice of Removal
Page 126

0040035685

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____ (Seal)

JAMES T. WILLIAMS

_____ (Seal)

STEPHANIE WILLIAMS

STATE OF CALIFORNIA }
COUNTY OF Los Angeles }ss.
}

On 1-3-05 before me, Laurene E Alvarez, notary public
personally appeared James T Williams and
Stephanie Williams personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

```
LAURENE E. ALVAREZ
Commission # 1379103
Notary Public - California
Los Angeles County
My Comm. Expires Oct 8, 2006
```
(This area for official notarial seal)

3008 (1/91) — (General) Fir Am erican Title Company

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

**Exhibit F to Notice of Removal
Page 127**

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"
## LEGAL DESCRIPTION

**LOAN NO.  0040035685**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **RIVERSIDE** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

**TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.**

Exhibit F to Notice of Removal
Page 128

# EXHIBIT "A"

ORDER NO.   2607032836-37


LOT 24 OF TRACT NO. 28958-3, IN THE CITY OF CORONA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 282 PAGE(S) 73 TO 76 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# RIDER TO SECURITY INSTRUMENT
# AND MODIFICATION TO NOTE
## Fixed Rate Option Feature

**DATE: January 3, 2005**          **LOAN NUMBER: 0040035685**

---

**FOR VALUE RECEIVED,** the undersigned (the "Borrower") agrees that the following provisions shall be incorporated into the Note and Security Instrument of even date herewith which were executed by the Borrower. The Security Instrument was executed by the Borrower and creates a lien in favor of **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES** ("Lender").

This Rider to Security Instrument and Modification to Note ("Rider and Modification") is attached to the Security Instrument. To the extent that the provisions of this Rider and Modification are inconsistent with the provisions of the Note and the Security Instrument, the provisions of this Rider and Modification shall prevail and shall supersede any such inconsistent provisions in the Note and the Security Instrument. Except to the extent modified by this Rider and Modification and other rider(s) and modification(s), if any, the provisions of the Note and the Security Instrument shall remain in full force and effect. Any capitalized term not defined in this Rider and Modification shall have the meaning given to such term in the Note or the Security Instrument.

| | |
|---|---|
| | 0 0 5 |
| | **LENDER'S USE ONLY** |

SD443A (2004-03-1)          Page 1          **CA**

**Exhibit F to Notice of Removal**
**Page 130**

0040035685

**A.      Conversion Option; Conversion Period**

The Borrower has the right to convert the adjustable rate of interest under the Note to a fixed rate of interest (the "Conversion Option") at any time beginning on the first regularly scheduled payment due date following the date the Borrower could first prepay the loan in full without paying a prepayment charge under the terms of the Note, and containing until the day immediately prior to the seventh anniversary of the Borrower's first regularly scheduled payment due date under the Note (the "Conversion Period"). Unless exercised by the Borrower during the Conversion Period, the Conversion Option will expire and the adjustable interest rate provisions in the Note will remain in full force and effect. Once the Borrower exercises the Conversion Option, the Note cannot later be converted back to an adjustable interest rate.

If the Borrower's loan is payable in biweekly installments, and if the Borrower exercises the Conversion Option, the Borrower's payment schedule under the Note will automatically convert to monthly installments and the loan will be due in full on the non-accelerated Maturity Date stated in the Note.

**B.      Conditions to Exercising the Conversion Option**

The Borrower can exercise the Conversion Option only if the Borrower has: (i) made all of the payments due under the Note and the Security Instrument prior to the exercise of the Conversion Option; (ii) made no more than two (2) payments under the Note more than 15 days after their regularly scheduled due dates during the 12-month period immediately preceding the exercise of the Conversion Option; and (iii) met all other terms and conditions of the Note and the Security Instrument.

**C.      Calculating the Fixed Rate**

The fixed rate of interest that will apply upon the exercise of the Conversion Option (the "Conversion Rate") will be calculated by adding 1.000 percentage points to the then current Federal National Mortgage Association's required net yield for 30-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments [expressed as a percentage] (the "FNMA Rate"). This calculation will be made at the time and in the manner described in paragraph D of this Modification and Rider. Any periodic interest rate change limitation in the Note will not apply to the fixed rate conversion, but in no event will the Conversion Rate be higher than the lifetime interest rate cap set forth in the Note.

The Borrower understands that the FNMA Rate fluctuates and that the fixed rates available during the Conversion Period may be substantially higher than the fixed rate available at the time the Borrower's loan is made. In the event the FNMA Rate is no longer quoted, the Lender will select an alternative rate source.

**Exhibit F to Notice of Removal
Page 131**

.

0040035685

*The Borrower may ask for the then current FNMA Rate by calling the Lender's fixed rate conversion representatives at the toll-free customer service number given on the Borrower's monthly statement.*

**D.**   <u>**Exercising the Conversion Option**</u>

To exercise the Conversion Option, the Borrower will take and complete the following steps **before** the end of the Conversion Period.

### 1. <u>Lock-in the Fixed Conversion Rate</u>

The Borrower will first obtain a Conversion Rate from the Lender by calling the Lender's fixed rate conversion representatives at the toll-free customer service number given on the Borrower's most recent monthly statement. The Lender will calculate the Conversion Rate as of that day, using the last quoted FNMA Rate from the immediately preceding business day. The Conversion Rate will be binding on the Borrower and the Lender for fourteen **(14)** days (the "Exercise Period") following the Borrower's telephone confirmation of the desire to exercise the Conversion Option.

### 2. <u>Notice to Convert; Conversion Fee</u>

After the Borrower obtains the Conversion Rate in the manner set forth above, the Lender will furnish the Borrower with a written notice to convert (the "Conversion Notice"). The Borrower will sign the Conversion Notice and return it to the Lender along with a conversion fee of U.S. $200.00 (the "Fee"). **Notwithstanding any notice provision to the contrary in the Note or the Security Instrument, the Conversion Option will be exercised only if the Conversion Notice and Fee are actually received at World Savings, Attn: Customer Service Administration, 4101 Wiseman Boulevard, Bldg. 106, San Antonio, Texas 78251, or at such other address as designated by the Lender in the Conversion Notice, prior to the end of the Exercise Period; otherwise, the Borrower must obtain a new Conversion Rate and start a new Exercise Period. The Borrower bears all risk of delivery, including, without limitation, the risks of non-delivery, misdelivery, loss or destruction.**

Notwithstanding anything to the contrary in this Rider and Modification, if the Borrower fails for any reason to exercise the Conversion Option in the manner described above after obtaining three (3) Conversion Rates and Exercise Periods, the Conversion Option will terminate and can no longer be exercised.

0040035685

**E.**     **New Monthly Payment Amount**

The Lender will calculate the Borrower's new monthly principal and interest payment after receiving the signed Conversion Notice and Fee during the Conversion Period. The Borrower's new monthly payment will be an amount sufficient to pay, in substantially equal payments by the Maturity Date, the unpaid principal balance of the Note (including any Deferred Interest) plus interest charged at the Conversion Rate. The payment change limitations in the Note do not apply to the fixed rate conversion.

If the Lender receives the Conversion Notice and Fee fifteen (15) days or more before the last day of the calendar month in which the Conversion Notice and Fee are received, unpaid principal will accrue interest at the Conversion Rate beginning on the fifteenth (15th) day of the following calendar month. If the Lender receives the Conversion Notice and Fee less than fifteen (15) days before the last day of the calendar month in which the Conversion Notice and Fee are received, unpaid principal will accrue interest at the Conversion Rate beginning on the fifteenth (15th) day of the second following calendar month. The date on which the Conversion Rate is first in effect is called the "Conversion Date." Interest will continue to accrue on unpaid principal in accordance with the adjustable interest rate provisions of the Note up to, but not including, the Conversion Date. The Borrower will continue to make all regularly scheduled biweekly payments in accordance with the adjustable interest rate provisions of the Note through and including any payment that falls due on the Conversion Date. Interest that accrues at the adjustable rate from the last scheduled biweekly payment until the Conversion Date will be added to principal and interest on it will accrue at the Conversion Rate. The Borrower's first monthly installment payment will be due one month from the Conversion Date. Subsequent monthly payments will be due on the same day of each following month.

*For example, if the Lender receives the Conversion Notice and Fee on March 10, which is more than fifteen (15) days before the end of that month, the Conversion Rate will first be charged on April 15 and the new monthly payment amount will first be due on May 15. The adjustable rate will be charged through April 14 and the Borrower pays all scheduled biweekly payments due through and including April 15. If the Conversion Notice and Fee were received March 20, which is less than 15 days before the end of that month, the Conversion Rate would be charged beginning on May 15 and the first fixed rate monthly payment would be due June 15. The adjustable rate would be charged through May 14 and the Borrower would pay the biweekly payments due through and including May 15.*

The Lender will notify the Borrower of the amount and effective date of the new fixed-rate monthly payments.

Exhibit F to Notice of Removal
Page 133

0040035685

**F.**      <u>**Loan Not Assumable and Due-On-Sale After Conversion to a Fixed Rate**</u>

Notwithstanding any provision to the contrary contained in the Note or the Security Instrument, if the Borrower exercises the Conversion Option, the Borrower's loan may not be assumed by any other person. If the Borrower sells or transfers all or part of the Property after exercising the Conversion Option, then the Lender may, at any time, require the Borrower to pay immediately and in full all amounts owing under the Note and the Security Instrument. If the Borrower's loan is otherwise assumable, a person who assumes the loan secured by the Security Instrument prior to the exercise of the Conversion Option also assumes the Conversion Option on the terms and conditions set forth in this Rider and Modification.

**THIS SPACE INTENTIONALLY LEFT BLANK;  SIGNATURE PAGE FOLLOWS.**

**Exhibit F to Notice of Removal**
**Page 134**

0040035685

**IN WITNESS WHEREOF,** the undersigned has executed this Rider and Modification on the _3rd_ day of _January 2005_.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_(signature)_ **(Seal)**

JAMES T. WILLIAMS

_(signature)_ **(Seal)**

STEPHANIE WILLIAMS

STATE OF CALIFORNIA }
COUNTY OF _Los Angeles_ }ss.
}
On _1-3-05_ before me, _Laurene E. Alvarez, notary public_
personally appeared _James T. Williams and_
_Stephanie Williams_ personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _(signature)_

LAURENE E. ALVAREZ
Commission # 1379103
Notary Public - California
Los Angeles County
My Comm. Expires Oct 8, 2006

(This area for official notarial seal)

3008 (1/91) — (General) First American Title Company

**Exhibit F to Notice of Removal**
**Page 135**

Government Code 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of notary: _Laurene E. Alvarez_

Commission No.: _1379103_

Date Commission expires: _Oct 8, 2006_

County: _Los Angeles_

By: _____

Date: _1/11/05_

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On November 12, 2013, I served a copy of the foregoing document entitled:

**NOTICE OF REMOVAL BY DEFENDANT WELLS FARGO, PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]**

on all interested parties in said case as follows:

| *Counsel for Plaintiffs,* *James Williams & Stephanie Williams:* | *Counsel for Defendant,* *NDeX WEST, LLC* |
|---|---|
| Joseph R. Manning, Jr., Esq. THE LAW OFFICES OF JOSEPH R. MANNING, JR. 4667 MacArthur Boulevard, Suite 150 Newport Beach, CA 92660 T: (949) 200-8755 \| F: (866) 843-8308 manningjr@aol.com | Edward A. Treder, Esq. BARRETT DAFFIN ET AL. 20955 Pathfinder Road, Suite 300 Diamond Bar, CA 91765 T: (626) 915-5714 \| F: (909) 595-7640 edwardt@bdftw.com |

**[X]   BY MAIL:**   I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. This declaration is executed in Pasadena, California, on November 12, 2013.

Jill Ashley
*(Print Name)*

_____
*(Signature of Declarant)*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Virginia A. Phillips_____ and the assigned Magistrate Judge is _____David T. Bristow_____ .

The case number on all documents filed with the Court should read as follows:

## EDCV13-02075 VAP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____November 12, 2013_____
Date

By _____L. Murray_____
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☐ Southern Division | ☒ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)     NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

James Williams and Stephanie Williams

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

WELLS FARGO BANK, N.A., a business entity form unknown, and NDEX WEST, LLC, a business entity form unknown, and DOES 1-100, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

Joseph R. Manning, Jr., Esq
THE LAW OFFICES OF JOSEPH R. MANNING, JR.
4667 MacArthur Boulevard, Suite 150; Newport Beach, CA 92660
T: (949) 200-8755 | F: (866) 843-8308 | manningjr@aol.com

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

Lynette Gridiron Winston, Esq. | lwinston@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600, Pasadena, California 91101
Tel: (626) 535-1900 | Fax: (626) 577-7764

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ 465,000 loan loss

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☒ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: ED CV 13 - 02075 VAP (DTBx)

CV-71 (09/13)

CIVIL COVER SHEET

Page 1 of 3

NOV 12 2013.

Generated by CamScanner from intsig.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| [x] Yes    [ ] No | [ ] Los Angeles | | Western |
| If "no, " go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | | Western |
| | [ ] Orange | | Southern |
| | [x] Riverside or San Bernardino | | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes    [x] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no, " go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [x] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [x] | [ ] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [ ] | [x] | [ ] | [ ] |

**C.1.  Is either of the following true?  If so, check the one that applies:**

[ ] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D,  below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

[ ] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D,  below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Eastern Division |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☐ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** *[signature]*   DATE: November 11, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of Pasadena, California; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On November 12, 2013, I served a copy of the foregoing document entitled:

**CIVIL COVER SHEET**

on all interested parties in said case as follows:

| *Counsel for Plaintiffs,*<br>*James Williams & Stephanie Williams:* | *Counsel for Defendant,*<br>*NDeX WEST, LLC* |
|---|---|
| Joseph R. Manning, Jr., Esq.<br>THE LAW OFFICES OF JOSEPH<br>R. MANNING, JR.<br>4667 MacArthur Boulevard, Suite 150<br>Newport Beach, CA  92660 | Edward A. Treder, Esq.<br>BARRETT DAFFIN ET AL.<br>20955 Pathfinder Road, Suite 300<br>Diamond Bar, CA  91765 |
| T: (949) 200-8755 \| F: (866) 843-8308<br>manningjr@aol.com | T: (626) 915-5714 \| F: (909) 595-7640<br>edwardt@bdftw.com |

**[X]    BY MAIL:**   I am readily familiar with the firm's practice of collection and processing correspondence by mailing.  Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  This declaration is executed in Pasadena, California, on November 12, 2013.

Jill Ashley
*(Print Name)*

*(Signature of Declarant)*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP